**David M. REINKRAUT, Zelda R. Reinkraut and Martin Reinkraut, Plaintiffs,**

**v.**

**Donna SHALALA, in her capacity as Secretary of the Department of Health and Human Services, Defendant.**

Civ. No. 93–NC–065 G.

United States District Court,
D. Utah,
Central Division.

May 31, 1994.

Michael E. Bulson of Utah Legal Services, Salt Lake City, UT, for plaintiffs.

Carlie Christensen of the U.S. Atty's Office, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came before the court May 20, 1994 on Cross Motions for Summary Judgment. Plaintiffs were represented by Michael E. Bulson of Utah Legal Services. Carlie Christensen, of the United States Attorney's Office, appeared on behalf of the Secretary. Following oral argument, the court took the matter under advisement. Now being fully advised, the court issues the following Memorandum Decision and Order.

## FACTS

The facts in this case are entirely undisputed. The only contested issues are matters of law.

Plaintiff (David Reinkraut) is disabled, as is his father, Martin Reinkraut. David and Martin live in the same household, along with David's mother, Zelda Reinkraut.

Because David is the disabled child of a disabled parent, David is entitled to federal Child Insurance Benefits (CIB) under the Social Security Act, 42 U.S.C. § 402(d)(1). David receives such benefits on his father's (Martin's) Social Security account. In addi-

tion, David's mother Zelda draws wife's insurance benefits on Martin's Social Security account. However, David's CIB benefits caused a reduction in Mrs. Reinkraut's social security benefits, because David and Zelda's combined entitlement brought the total amount of benefits on Mr. Reinkraut's Social Security account above the family maximum. *See* 42 U.S.C. § 402(k)(3)(A).

Through intermittent work, David has contributed enough to Social Security to become eligible for disability insurance benefits (DIB) under 42 U.S.C. § 423 et seq. Consequently, David is now paid more under DIB than he was under CIB. More importantly, David is entitled to DIB under his own account, rather than on his father's account. Although David remains "technically entitled" to CIB under his father's account, David was required to choose between DIB and CIB because David's DIB benefits reduce his CIB entitlement to zero. *See* 20 C.F.R. § 404.407(a). Thus, David could never receive CIB benefits unless he renounced his DIB benefits. David has chosen DIB on his own account and no longer receives CIB on his father's account.[1]

Despite the fact that David no longer receives CIB on his father's account, his "technical entitlement" to CIB is still being used to reduce his mother's Social Security benefits. Consequently, David seeks to waive his technical entitlement to CIB so his mother's social security benefits will stop being penalized.

The Secretary of Health & Human Services (HHS) refuses to allow David voluntarily to waive his right to future CIB benefits. In fact, by regulation, HHS will not terminate David's CIB eligibility unless David "withdraws his application" and pays back the approximately $20,000 he received under CIB before he became entitled to DIB. *See* 20 C.F.R. § 404.640(b).

When David's waiver of CIB entitlement application was denied, he requested a hearing before an Administrative Law Judge (ALJ). On August 28, 1992, the ALJ ruled in favor of David and ordered HHS to allow David voluntarily to terminate his entitlement to CIB benefits. Subsequently, an appeals board reversed the ALJ, finding that voluntary termination is not permitted.

## ANALYSIS

### I. Interpretation of 42 U.S.C. § 402(d)(1)

■ The Secretary argues that 42 U.S.C. § 402(d)(1) says nothing about CIB recipients voluntarily waiving future benefits. The Secretary notes that Congress could have added such a provision if it so chose, and that general rules of statutory construction dictate against adding terms to unambiguous statutes.

Plaintiffs, in turn, acknowledge that section 402(d)(1) is silent on the issue of waiving future benefits. Plaintiffs conclude, however, that Congress never could have intended to bar recipients from voluntarily renouncing benefits, and that Congress' silence indicates that such waivers are permitted.

42 U.S.C. § 402(d)(1) states that a Child Insurance Benefit ends "with the month preceding" whichever of the following first occurs—

> (D) the month in which such child dies or marries,
>
> (E) the month in which such child attains the age of 18, but only if he is (i) not under a disability (as so defined) at the time he attains such age, and (ii) is not a full time elementary or secondary school student during any part of such month . . . .

42 U.S.C. § 402(d)(1).

It is apparent that the statute enumerates certain events that automatically terminate eligibility for Child Insurance Benefits, although it says nothing about voluntary termination of benefits. According to the Secretary, such silence indicates that Congress intended Section 402(d)(1)(C, D & E) as an exhaustive list of events that stop an entitlement to Child Insurance Benefits.

This court disagrees. While Congress surely meant to establish conditions under which recipients of CIB *automatically lose* their entitlement, it is dubious that Congress

---

1. Since DIB is based on David's own employment income, rather than his father's, David's DIB support has no impact on his mother's spousal social security benefits.

entertained the situation in which a recipient *voluntarily renounces* an entitlement. The Secretary's contention is particularly suspect in view of 20 C.F.R. § 404.640(b), the Secretary's own regulation, which provides a means for CIB recipients to forego benefits by withdrawing their applications. Had Congress intended section 402(d)(1)(C, D & E) as the exclusive means of terminating CIB benefits, the Secretary's regulation would itself clash with Congressional intent by providing another method of stopping payments.

The court is similarly unpersuaded by plaintiff's argument that Congress intentionally permitted the refusal of CIB benefits by remaining silent on the issue. Without direction from Congress, this court declines the invitation to add terms to an unambiguous statute.

In enacting section 402(d)(1), it appears that Congress neither condoned nor foreclosed the possibility that CIB recipients voluntarily could forego their entitlement. Moreover, the court finds that 20 C.F.R. § 404.-640(b) constitutes an administrative regulation designed to address a situation left unresolved by Congress. Consequently, the case at bar must be resolved based on the merits of the Secretary's regulation.

## II. 20 C.F.R. § 404.640(b)

■ 20 C.F.R. § 404.640(b) provides as follows:

(b) An application may be withdrawn after [the Secretary] make[s] a determination on [the application] if—

(3) All benefits already paid based on the application being withdrawn are repaid or [the Secretary] is satisfied that they will be repaid.

Under this regulation, HHS allows CIB recipients to terminate benefits by withdrawing their applications, *provided* the aid recipients repay all benefits previously received under the application. Plaintiffs argue that such a requirement is unreasonable.

■ Where a statute is silent or ambiguous on a particular issue, a court must ask whether the administrative agency's regulation is based on a permissible construction of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The agency's regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 844, 104 S.Ct. at 2782. To sustain an agency's regulation, the court need only find that the regulation is a sufficiently rational interpretation of the statute. *Chemical Mfrs. Assn. v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985).

■ As a general rule, however, the Social Security Act is construed liberally in favor of beneficiaries to effect the act's remedial purpose. *Mandrell v. Weinberger,* 511 F.2d 1102, 1103 (10th Cir.1975); *Hurley by Hurley v. Bowen,* 857 F.2d 907, 912 (3rd Cir 1988); *Friedman v. Sec. of Dept. of Health & Human Services,* 819 F.2d 42, 45 (2d Cir. 1987); *Slessinger v. Sec. of Health & Human Services,* 835 F.2d 937 (1st Cir.1987).

Plaintiffs contend that 20 C.F.R. § 404.640 is a patently unreasonable interpretation of Section 402(d), and of the Social Security Act generally. Plaintiffs note that the Secretary's regulation could lead to absurd results. In addition to the incongruous situation presented by the facts in the case at bar, plaintiffs suggest a hypothetical situation in which a lottery winner chooses to save the government money by renouncing future benefits, but is hampered from doing so by a regulation that requires repayment of all past benefits as a precondition. In the lottery case hypothetical, the Secretary's regulation could result in a person receiving unwanted government aid at taxpayer expense.

Plaintiffs argue that § 404.640 produces an unjust and absurd hardship for David Reinkraut because David's "technical entitlement" is so technical that it is of no value to David. Plaintiffs note that David could receive CIB benefits on his father's account only by foregoing the DIB benefits he receives on his own account. Because David receives more under DIB than he would under CIB, David would never have reason to give up his DIB entitlement. Nevertheless, David's mother—and in essence David's household income—is penalized by the possibility, howev-

er unlikely, that David might give up his DIB benefits and again draw CIB on his father's account. Only by reimbursing the Secretary approximately $20,000 for past benefits could David eliminate his technical entitlement to future benefits, even though there is virtually no chance that David would ever draw future CIB benefits. Plaintiffs maintain that Congress surely could not have intended such a result, particularly from a program designed to help the disabled.

Plaintiffs draw an analogy with *McAninch v. Bowen,* 693 F.Supp. 353 (W.D.Penn.1988). In *McAninch,* the daughter, Kimberly, initially drew CIB on her disabled mother's Social Security account. Subsequently, Kimberly's father also became disabled. Kimberly then switched to her father's account because his account yielded a higher insurance payment. When Kimberly's father's benefits were suspended after a trial work period, Kimberly's benefits were also suspended, despite the fact that her mother remained disabled. The Secretary took the position that Kimberly could not transfer back to her mother's account because the statute at issue made no provision for her to do so. The court found such a result both offensive and inconsistent with the purposes of the Social Security Act, which was designed to "place into the hands of the child the largest payment possible." *Id.* at 355.

Although the *McAninch* Court dealt with statutory interpretation rather than a particular regulation, this court shares the opinion that the Secretary's position should be evaluated in light of clear Congressional intent to benefit the disabled. Thus, notwithstanding the deference to which administrative regulations are entitled, this court will evaluate the Secretary's regulation in light of the purpose behind 42 U.S.C. Section 402(d) and the Social Security Act generally.

When questioned during oral argument, the Secretary's counsel suggested a strong policy purpose for the promulgation of 20 C.F.R. § 404.640, i.e. to protect the disabled (and other aid recipients) from waiving their right to benefits against their self interest. In other words, that the regulation is paternalistic measure designed to prevent aid recipients from relinquishing benefits—through coercion or otherwise—to which they are entitled. In the case of CIB benefits, for example, a coercive parent might cause a child to waive an entitlement to CIB benefits in order to enhance that parent's benefits on the same Social Security account. In such a case, the onerous repayment burden under 20 C.F.R. § 404.640 might act as a protective deterrent for the disabled child.

It is manifest that such a purpose bears a rational relationship to the underlying purposes of the Social Security Act. Protecting CIB recipients from relinquishing their entitlement, against their own interests, is not entirely inconsistent with a general intent to benefit the disabled. Consequently, this court lacks a basis for discarding the entire regulation as arbitrary, capricious, or manifestly contrary to the statute under *Chevron.* However, in a case such as this, where a disabled child is entitled to benefits under his own account, in an amount exceeding the CIB benefits to which he is "technically" entitled, there is no rational basis for demanding repayment of past benefits as a condition of waiving future CIB benefits.

The Secretary's position in this matter is entirely inconsistent with the stated purpose of 20 C.F.R. § 404.640. If, as the Secretary contends, the regulation is a paternalistic measure designed to protect benefits recipients, then an obvious question arises: from what is David being protected? Even in the hypothetical case that David was coerced into relinquishing his CIB entitlement, David would remain entitled to DIB benefits on his own account—in an amount greater than the CIB benefits to which he was entitled. In other words, David's choice of DIB over CIB, whether coerced or not, could lead to no result other than an increase of Social Security benefits flowing to his mother and no reduction in payment to David. The only possible way for David to lower his benefits is by relinquishing his DIB entitlement and moving back to CIB. In such a case, the only party that could benefit from such a choice is the federal government, which would pay less in benefits. Even if David made such a foolish choice, however, the effect is simply to move from one entitlement program to another, albeit with lower benefits. Thus, because David is simultaneously

eligible for two different entitlement programs, David is protected no matter which program he chooses. Consequently, there is little reason to protect David from relinquishing a "technical" entitlement to CIB.

20 C.F.R. § 404.640 does more than offer dubious protection to disabled aid recipients such as David. It also works a substantial hardship on David's household income. So long as David remains technically entitled to CIB benefits, David's mother will suffer a penalty in her spousal Social Security income as though David were drawing CIB payments. Thus, while it is extremely unlikely that David would ever choose to draw CIB benefits, the Secretary's regulation "protects" David by diminishing the amount of money flowing into the household in which David and his disabled father live. Congress surely could not have intended such a result from a program meant to assist the disabled. Notwithstanding the deference to which administrative regulations are entitled, it strains credulity under the facts of this case to conclude that the regulation in question, which was designed to protect aid recipients, should be applied to the plaintiff or others similarly situated.

Based upon the foregoing, this court finds 20 C.F.R. § 404.640 to be invalid as applied to plaintiff in this case. With respect to plaintiff and others who are concurrently entitled to benefits under CIB and DIB, the court finds it manifestly contrary to the Social Security Act to demand repayment of past benefits as a precondition for withdrawing applications for the purpose of ending a technical entitlement. Accordingly, it is hereby

**ORDERED,** that David Reinkraut be permitted to withdraw his application for future Child Insurance Benefits without reimbursing the federal government for Child Insurance Benefits already received; it is

**FURTHER ORDERED,** that Zelda Reinkraut's Social Security benefits shall be immediately restored to full value once David Reinkraut's application for CIB benefits is withdrawn.

**IT IS SO ORDERED.**