Anthony PARISI, II, a minor, by his Parent and Natural Guardian, Lorralee COONEY, Plaintiff, Appellee,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant, Appellant.

No. 95–1230.

United States Court of Appeals, First Circuit.

Heard Sept. 15, 1995.

Decided Nov. 8, 1995.

**616**

Steve Frank, United States Department of Justice, with whom Frank W. Hunger, Assistant Attorney General, Donald K. Stern, United States Attorney, and William Kanter, United States Department of Justice were on brief, for appellant.

Sandra L. Smales, with whom Raymond Cebula was on brief, for appellee.

Before STAHL, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

In 1991 when Anthony Parisi, II ("Anthony") was nine years old, the Social Security Administration reduced the amount he was receiving in dependent child's benefits on account of his disabled father Anthony Parisi ("Parisi") from $464 a month to $262 a month. The purported justification for the reduction is a provision in the Social Security Act ("SSA") that sets a maximum amount that can be paid out on a single wage earner's account. If the benefits paid on that account exceed the maximum, a reduction is required to comply with the cap. The cap was exceeded in this case, the agency says, when Parisi's wife (who is not Anthony's mother and with whom Anthony does not live) was deemed "entitled" under one subsection of the statute to spousal benefits on Parisi's account. Another part of the same section of the statute, however, prohibited any portion of those benefits from actually being paid to her. The question is whether those spousal "benefits," which were never actually payable, were properly counted to-ward the family maximum cap. We conclude that they were not and accordingly affirm the district court's reversal of the agency's determination.

## I. *Factual Background*

While married to Adriana Parisi, Anthony Parisi, a fisherman, had a child, Anthony Parisi, II, with Lorralee Cooney of Gloucester, Massachusetts. Anthony lives with Ms. Cooney, who has sole custody of him and brings this action on his behalf.

In February 1988, Parisi became disabled, and he and Anthony, as his dependent, started receiving payments on his account as a wage earner.[1] In 1991, Adriana Parisi applied for and became eligible for early retirement ("old-age") benefits under the SSA based on her own wage-earner's record. By operation of the statute, she was automatically deemed *also* to have applied for and to qualify for spousal benefits on Parisi's account. *See* 42 U.S.C. § 402(r)(1). However, because the benefits to which Adriana was entitled on her *own* account exceeded the spousal benefits for which she qualified on her husband's account, it was determined that she could be paid benefits only on her own account.

The agency also decided, however, that Adriana's spousal benefits—even though not actually payable to her or anyone else—still had to be counted toward the SSA's statutory limit (the "family maximum") on benefits available on a single worker's record. Because the benefits Anthony was already receiving, when combined with Parisi's own benefits and Adriana's (non-payable) spousal benefits, exceeded the statutory maximum amount, the agency reduced Anthony's dependent benefits. Lorralee Cooney was so notified. On reconsideration at Cooney's request, the agency reaffirmed its decision to reduce Anthony's benefits.

The agency's determination was appealed to an administrative law judge ("ALJ"), who concluded that Adriana's non-payable spousal benefits should *not* be counted toward the

---

1. It is undisputed that Anthony was and still remains entitled to receive dependent child's benefits on the basis of Parisi's work record.

family maximum. The agency appealed the ALJ's decision to the Social Security Appeals Council, which reversed the ALJ. The Appeals Council's decision was appealed to the district court. *See* 42 U.S.C. § 405(g). The agency argued that under the plain language of the SSA, calculation of the family maximum includes *all* "entitlements," not just entitlements that result in actual payment. The district court disagreed. It concluded that the SSA's "family maximum" cap on benefits was meant to include only "effective entitlements" (entitlements that result in some actual payment), not "conditional entitlements," and that because Adriana Parisi's spousal benefits were only *conditional* (upon her not being entitled to a larger benefit on her own wage-earner's account), they were not properly counted toward the family maximum.

## II. *Relevant Statutory Provisions*

The two statutory provisions primarily at issue are 42 U.S.C. § 403(a) and 42 U.S.C. § 402(k)(3)(A). The former contains the "family maximum" provision and the latter is the provision that prevents Adriana Parisi from being actually paid any spousal benefits on the basis of Parisi's work record (which she would otherwise have received under section 402(b)(1)). Section 403(a) provides in pertinent part as follows:

> ... [T]he total monthly benefits to which beneficiaries may be entitled under section 402 or 423 of this title for a month on the basis of the wages and self-employment income of [an] individual [wage-earner] shall ... be reduced as necessary so as not to exceed [the maximum amount set by statute].

42 U.S.C. § 403(a)(1). And section 402(k)(3)(A) provides in relevant part:

> If an individual is entitled to an old-age or disability insurance benefit for any month and to any other monthly insurance benefit for such month, such other insurance benefit for such month, after any reduction ... under section 403(a) of this title, shall be reduced, but not below zero, by an amount

equal to such old-age or disability insurance benefit. ...

42 U.S.C. § 402(k)(3)(A).

The parties agree that, because the monthly amount of Adriana Parisi's old-age benefits on her own work record *exceeds* the amount of spousal benefits she could be paid on her husband's record under section 402(b)(1), section 402(k)(3)(A) has the result of reducing to *zero* the payable amount of Adriana Parisi's spousal benefits. It is also agreed that Adriana's own old-age benefits, as well as Parisi's benefits, are *not* subject to reduction under section 403(a). Thus the only payable benefits at stake are Anthony's.[2] The statutory issue is whether the amount of "total monthly benefits to which beneficiaries may be entitled" for purposes of section 403(a) must include what the monthly amount of Adriana's spousal benefits would have been under section 402(b)(1) but for the operation of section 402(k)(3)(A) of the statute. If Adriana's non-payable spousal benefits are included in the family maximum calculation, then Anthony's benefits were properly reduced. If not, then the district court's judgment must be affirmed.

## III. *Discussion*

Our analysis begins with the text of the statute. If the meaning of the text is clear, then that meaning must be given effect, unless it would produce an absurd result or one manifestly at odds with the statute's intended effect. *St. Luke's Hosp. v. Secretary of HHS*, 810 F.2d 325, 331 (1st Cir. 1987). If the relevant text and congressional intent are ambiguous, then an agency's reasonable interpretation is entitled to deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). No deference, though, is due an agency interpretation that is inconsistent with the language of the statute, contrary to the statute's intended effect, arbitrary, or otherwise unreasonable. *See Massachusetts Dep't of Education v. United States Dep't of Education*, 837 F.2d 536, 541 (1st Cir.1988).

---

**2.** The parties also agree that if Adriana had actually been paid spousal benefits on Parisi's account, then a corresponding reduction in benefits for Anthony would have been warranted under the family maximum provision.

## A. *The Statutory Language*

■ The agency claims that its position is plainly supported by two aspects of the statutory text: the term "entitled" in section 403(a), and the phrase "after any reduction . . . under section 403(a)" in section 402(k)(3)(A). We conclude that the statutory text does not support the intuitively troubling result urged by the agency.

The Commissioner of Social Security ("Commissioner") emphasizes that the family maximum is formulated on the basis of *entitlement*, and that section 403(a) never speaks in terms of benefits actually received. Thus, the argument goes, because subsection (b)(1) of section 402, considered in isolation, "entitles" Adriana Parisi to spousal benefits on the basis of her husband's SSA record, such benefits must be included in the family maximum calculation, even though the same section of the statute just a few paragraphs later, *see* § 402(k)(3)(A), operates to render those very benefits wholly *non-payable.*

The Commissioner's argument is strained, and certainly not dictated by the statutory text's plain language. Section 403(a)(1) of the SSA limits and requires the reduction "as necessary" of the "total monthly benefits to which beneficiaries may be entitled *under section 402* . . . on the basis of the wages and self-employment income of [the wage-earner, here Mr. Parisi]." 42 U.S.C. § 403(a) (emphasis added). The agency's claim that section 403(a) requires the inclusion of all "entitlements" in the family maximum computation begs the question whether a so-called "entitlement" created in one part of section 402 that is simultaneously prevented from yielding any actually payable benefit by another applicable portion of section 402 can properly be deemed an "entitle[ment] under section 402" at all.[3] We doubt that it can. Indeed, even according to the agency's own regulatory definition, a person is "entitled" to a benefit only when that person "has proven

his or her right to benefits for a period of time." 20 C.F.R. § 404.303. Here, Adriana Parisi has "proven" no right to benefits *under section 402* (taken as a whole) for *any* period of time.

We need not decide, however, whether the Commissioner's understanding of the term "entitlement" is somehow supportable, because the agency's argument, even taken on its own terms, does not carry the day. For one thing, the claim that section 403(a) is concerned primarily with "entitlements" is not, in fact, fully borne out by the actual language of the statute. Section 403(a) places a limit not on entitlements *per se*, but rather on "the total monthly *benefits* to which beneficiaries may be entitled *under section 402* . . . ." 42 U.S.C. § 403(a) (emphases added). A natural reading of this language suggests that the primary object of limitation is the "total monthly benefits" produced by the operation of section 402 *as a whole,* and not, as the Commissioner argues, theoretical entitlements created by one fragment of section 402 considered in artificial isolation from the rest of that same section, and wholly apart from the benefits that ultimately attach. Here, the total *benefits* to which Adriana Parisi might be deemed "entitled" under section 402—when that section is considered in its entirety—amount to *zero.* Hence, Adriana's putative benefits under section 402 could not possibly contribute anything to the family maximum computation under section 403(a).

In addition to requiring an unnatural reading of the statute, the Commissioner's argument is logically unsound. Under the Commissioner's "pure entitlement" approach, section 403(a) is said to place a ceiling on pure entitlements, regardless whether any payable benefits attach thereto. If the total amount of *entitlements* available on a single worker's record exceeds the statutory limit, so the theory goes, a reduction under section 403(a)

---

**3.** It would seem an unconventional usage at best to say that Adriana Parisi is *entitled* to benefits which the statute clearly disallows in her case, leaving her with not even an expectancy of receiving them. *Cf. Board of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (an *entitlement,* contrasted to a mere expectancy, creates a property interest

protected by the Fourteenth Amendment); *Goldberg v. Kelly,* 397 U.S. 254, 260–66 & n. 8, 90 S.Ct. 1011, 1016–20 & n. 8, 25 L.Ed.2d 287 (1970) (deprivation of statutory *entitlement* triggers procedural due process concerns); *see also Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) (similar).

is required, whether the excess entitlements produce payable benefits or not. On the other hand, the Commissioner simultaneously claims that when the total amount of "entitlements" causes the family maximum cap to be exceeded, it is the *payable benefits* that are subject to reduction under the statute. This position is internally inconsistent. If the thrust of section 403(a) is to place a limit on *entitlements*, it is contradictory to say that compliance with the family maximum cap can be achieved through a reduction of *payable benefits*. Because under the Commissioner's logic, an "entitlement" is entirely separate from the payable benefits (if any) that attach, it would seem to follow that a reduction in benefits *paid* could never be effective to achieve compliance with the cap.

■ We conclude that the Commissioner's contention that section 403(a) is concerned purely with theoretical entitlements, irrespective of whether any actually payable benefits attach thereto, is supported neither by the language of the statute nor by reason.

We also are unpersuaded by the Commissioner's argument to the extent it rests on the phrase "after any reduction ... under section 403(a)" in section 402(k)(3)(A). The Commissioner contends that this phrase specifically instructs that the reduction under section 403(a) for compliance with the family maximum provision be computed *before* any reduction is taken under section 402(k)(3)(A), and that, therefore, for purposes of section 403(a), Adriana Parisi's spousal benefits must be treated (contrary to fact) as if they were fully payable.

■ The Commissioner reads too much into the phrase "after any reduction ... under section 403(a)." Section 402(k)(3)(A) is triggered when an individual who is entitled to old-age benefits on her own social security record (as Adriana is in this case) is *also* facially entitled to some other simultaneous benefit (in this case, spousal benefits on Parisi's account). In substance, section 402(k)(3)(A) has the effect of authorizing such an individual to receive payment of the larger of the two simultaneous benefits, but not both.[4] Thus, section 402(k)(3)(A) requires comparing the size of the beneficiary's "other" benefit with her own old-age benefit. The "after any reduction under section 403(a)" language in section 402(k)(3)(A) ensures that, in determining the amount of the "other" simultaneous benefit in question, the calculation will take into account any reduction to the "other" benefit that would otherwise be required under section 403(a). This prevents the old-age beneficiary from receiving, by operation of the simultaneous benefits provision, any amount of benefits that would otherwise be excluded as exceeding the cap imposed by section 403(a).[5]

There is nothing in the language of section 402(k)(3)(A) or section 403(a), however, that dictates that the family maximum computation cannot take into account the fact that an entitlement that would normally contribute to the family maximum amount has been reduced to zero by operation of the simultaneous benefits provision of section 402(k)(3)(A). It is true that the computation required under section 402(k)(3)(A) requires a provisional determination whether the "other" simultaneous benefit (here, Adriana's spousal benefits) would, if payable, be subject to reduction under section 403(a). But this computation is only necessary for the purpose of determining what portion of the two simultaneous benefits the beneficiary (Adriana) is entitled to receive. There is no language in section 402(k)(3)(A), and certainly not in section 403(a), requiring that the family maximum computation *ignore* the actual

---

4. More precisely, the provision entitles the beneficiary to payment of her old-age benefit *plus* the difference between the "other" benefit and the old-age benefit, if that difference is greater than zero. This is the same as saying that the beneficiary is entitled to an amount equal to the larger of the two simultaneous benefits in question.

5. Suppose, for example, that a beneficiary is simultaneously entitled to receive her own old-age benefit of amount B and a spousal benefit of amount S. Suppose also that if the spousal benefit were payable, the family maximum cap would be exceeded, and the spousal benefit (S) would be reduced by the amount of the statutory reduction, to amount S(r). The "after any reduction" language in section 402(k)(3)(A) ensures that the beneficiary will receive an amount equal to the larger of B and the reduced S(r), *not* simply the larger of B and S.

results of the simultaneous benefits determination of section 402(k)(3)(A).

■ To the contrary, the statutory language suggests an interplay between section 403(a) and section 402(k)(3)(A) that belies the position advanced by the Commissioner. Section 403(a) requires only such "reduc[tion] *as necessary* so as not to exceed" the family maximum. The determination of whether a reduction is necessary in this case depends upon the calculation of the "total monthly benefits" to which Adriana Parisi "may be entitled under section 402" on the basis of her husband's SSA record. As explained, that amount is *zero.* Hence, the relevant "total monthly benefits" available under section 402 on Parisi's work record (combined with Parisi's own benefits) do not exceed the statutory ceiling. It cannot be "necessary," then, to reduce Anthony's benefits.

We conclude that the Commissioner's position does not follow from the plain language of section 402(k)(3)(A) and section 403(a).

### B. *Legislative History*

As the district court observed, the interpretation urged by the Commissioner produces a result that Congress apparently sought to avoid. The most illuminating legislative comments are found in connection with the enactment of the 1949 amendments to the SSA, which changed the previously existing family maximum provision:

> Under the present law, the total of the family benefits for a month is reduced to the maximum permitted by section [403(a)] prior to any deductions on account of the occurrence of any event specified in the law.... Section [403(a)] as amended by the bill reverses this procedure and provides that the reduction in the total benefits for a month is to be made after the deductions. As a result, larger family benefits will be payable in many cases.

S.Rep. No. 1669, 81st Cong., 2d Sess. (1950), *reprinted in* 1950 U.S.C.C.A.N. 3287, 3361. After this statement, the Senate Report set forth a hypothetical scenario illustrating that under the amendments to section 403(a), the family maximum provision would not operate to reduce a child's SSA benefits on account of

a family member's nominal entitlement to benefits that are not actually payable. *See id.*

Congress expressed an intent that section 403(a) not operate to deprive a dependent child of SSA benefits on the basis of theoretical entitlements that produce no actual benefits. The agency's reading of the statute is inconsistent with that intent.

### C. *Regulatory Language*

■ Our conclusion that the Commissioner's interpretation of the statute is inconsistent with both its text and intended effect suffices, under *Chevron,* to obviate any requirement of deference to the agency's position. *See Massachusetts Dep't of Education,* 837 F.2d at 541. We add, however, as a capstone to our analysis, that the Social Security Administration's own regulations are at odds with its proposed construction of the statute. The regulation that describes generally the effect of the family maximum provision explains its operation in this way:

> *Family Maximum.* As explained in § 404.403, there is a maximum amount set for each insured person's earnings record that limits the *total benefits payable* on that record. If you are entitled to benefits as the insured's dependent or survivor, your benefits may be reduced to keep *total benefits payable* to the insured's family within these limits.

20 C.F.R. § 404.304(d) (emphasis added). The regulation that more specifically describes the operation of the family maximum provision contains similar language:

> The Social Security Act limits the amount of monthly *benefits that can be paid* for any month based on the earnings of an insured individual.

20 C.F.R. § 404.403(a)(1) (emphasis added).

The agency's own interpretative regulations thus interpret the family maximum provision as operating to limit the "amount of benefits that can be *paid*" on a single worker's account. They do not state that section 403(a) caps the total amount of *entitlements* that might be available on an account. That the agency has chosen in its own regulations to describe the family maximum as placing a

ceiling on benefits *paid* or *payable* casts further doubt on its contention here that section 403(a) is concerned with capping pure entitlements, *regardless* of the amount of payable benefits that attach.

To similar effect is language contained in the agency's written rulings on Anthony's benefits as communicated to Lorralee Cooney. In the first letter from the Social Security Administration to Cooney notifying her that her son's benefits were to be reduced, the agency explained that the reduction was required because the statute imposes a "limit on how much we can *pay* on each person's Social Security record [emphasis added]." And later, in a letter reaffirming its initial decision after reconsideration, the agency informed Cooney that the family maximum provision "limits the total amount of the benefits *payable* on an individual's earnings record."

The regulations and agency statements quoted above support the conclusion we adopt here, namely, that the "family maximum" provision of section 403(a) operates to limit only those benefits that are *payable* on a single worker's account.

### D. *Policy Considerations*

■ We observe, finally, that the purported policy reasons offered in support of the Commissioner's construction of the statute lack persuasive force.

The agency says its position prevents families from receiving duplicative or excessive benefits. In this case, the Commissioner asserts, applying section 403(a) in the manner suggested would have the effect of making the total amount of benefits payable to the "family unit" (Parisi, Anthony, and Adriana) roughly the same as it was before Adriana became entitled to receive her own old-age benefits.

The problem with this rationale is twofold. First, the family maximum provision (despite its common appellation) is written *not* as a broad limitation upon the amount that a family unit can receive in total SSA benefits, but rather as a specific limitation upon the amount of benefits available on the basis of a single worker's record. *See* 20 C.F.R. § 404.403(a)(1) (explaining that section 403(a) places a maximum "for each person's earnings record that limits the total benefits payable *on that record*" (emphasis added)). Adriana "earned" her old age benefits through her own years in the work force, not because she was the wife of Parisi. The question under section 403(a) is not whether the *family* 's benefits have exceeded a certain level, but whether the benefits payable on a single wage-earner's account have exceeded the statutory maximum.

Second, the agency's suggestion that the reduction of benefits to Anthony prevents duplicative payments to the "family unit" rings hollow. Anthony lives with his natural mother, not with Adriana and Parisi. The agency does not suggest that any portion of Adriana's or Parisi's benefits reaches the child. The agency's statement that "the family unit continues to receive approximately the same overall benefits as it did before" thus distorts reality. In fact, under the agency's interpretation, Anthony receives only half the benefits he was receiving before; and because neither the father's nor Adriana Parisi's own benefits are subject to reduction under the family maximum provision, it is *only* the child who has been adversely affected by the agency's action in this case.

The other purported policy justification offered in defense of the Commissioner's position is that reduction of the child's benefits in this case is required to uphold the meaning of "entitlement." The Commissioner contends that because section 403(a) places a limit on "entitlements," and because Adriana Parisi is "entitled" to spousal benefits under one subsection of the statute (even though those benefits are not payable), failure to include those non-payable benefits in the family maximum tally will dilute the meaning of "entitlement" under the SSA.

We find this reasoning unpersuasive. The flaw in this argument is the same as the flaw underlying its plain meaning argument: it incorrectly assumes that section 403(a) is concerned with keeping pure "entitlements" under the statutory limit. To the contrary, as we concluded above, section 403(a) operates in this case to limit the total amount of

*benefits payable* on a single wage-earner's record under the relevant benefits provisions (read as a whole), not to limit entitlements theoretically available under one subsection of the statute considered in artificial isolation. In any event, although this conclusion negates the Commissioner's claim that Adriana Parisi's non-payable spousal benefits must be included in the family maximum calculation, it does not directly undermine the Commissioner's purported definition of "entitlement," nor is it necessarily inconsistent with saying here that Adriana Parisi has, in some abstract sense, an "entitlement" to spousal benefits under section 402(b)(1) read in isolation from the rest of section 402. We hold only that Adriana's non-payable spousal benefits do not count toward the section 403(a) "family maximum."

### E. *Conclusion*

We conclude that the Commissioner's proposed construction of section 403(a) is not supported by the language of the statute, is logically flawed, is inconsistent with the statute's intended effect, is contrary to the agency's own interpretative regulations, and is not supported by any sound considerations of policy. Accordingly, we do not defer to the Commissioner's position under the principles of *Chevron,* and we hold that section 403(a) operates to limit the total amount of benefits actually *payable* on a single worker's record, not the amount of entitlements theoretically available.[6]

In this case, because Adriana Parisi's "entitlement" under section 402(b)(1) to spousal benefits on Parisi's work record produces *zero payable* benefits as a result of the operation of section 402(k)(3)(A), no such benefits are included in the computation required under section 403(a). Consequently, the total amount of benefits payable on the basis of Parisi's work record does not exceed the maximum imposed by the statute, and it is not "necessary" for purposes of section 403(a) to reduce Anthony's benefits. The district court correctly reversed the decision of the Social Security Appeals Council.

*Affirmed.*

---

**6.** Our reasoning differs from that employed by the district court. The district court's analysis distinguished between "effective" and "conditional" entitlements. This distinction, although sensible, has no roots in the statutory language. We rely, instead, on the notion that section 403(a) places a limit not upon non-payable "entitlements" created by an isolated subsection of the SSA, but upon payable benefits—in this case, the total benefits yielded by section 402 of the SSA read as a whole. This notion is semantically supported by the statutory framework and by the agency's own regulations, which speak specifically in terms of *payable benefits* (*e.g.*, 20 C.F.R. § 404.304(d)).