**Bernice MEREDITH, by her representative payee and next best friend, Lynden R. MEREDITH, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security Administrator, Defendant.**

**No. CV–N–96–485–DWH(PHA).**

United States District Court,
D. Nevada.

Sept. 12, 1997.

Despina M. Hatton and Ernest K. Nielsen, Reno, NV, for plaintiff.

Kathryn E. Landreth, United States Attorney, Shirley Smith, Assistant U.S. Attorney, Reno, NV, for defendant.

## ORDER

HAGEN, District Judge.

Before the court is the Magistrate Judge's report and recommendation (# 17) to reverse the order affirming the final decision of the Commissioner of Social Security Administration and to deny the Commissioner's motion (# 15) for summary judgement. Under 28 U.S.C. § 636(b)(1)(C), the court may accept, reject or modify in whole or in part the Magistrate Judge's recommendation, but make a *de novo* determination as to any portion of the recommendation to which a timely objection has been filed. None has been.

After the objection period had passed, the Commissioner gave notice (# 18) to the court that effective August 1, 1997, the entitlement of plaintiff's child, Gail, to child's insurance benefits had terminated by operation of law, and urged that therefore this action had become moot. Plaintiff then requested (# 19) to be allowed to respond to that notice at a later time.

The court sees no reason for delay or dismissal of the action as moot. What the commissioner says occurred by operation of

law was precisely one of the recommendations of the Magistrate Judge.

Accordingly, the court **ADOPTS** and **ACCEPTS** in whole the Magistrate Judge's report and recommendation (# 17). The order affirming the Commissioner's decision is reversed and the Commissioner's motion (# 15) for summary judgment is *DENIED.* Plaintiff's motion (# 19) for time in which to respond to the Commissioner's notice (# 18) is *DENIED* as moot. Let judgment be entered accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

ATKINS, United States Magistrate Judge.

### INTRODUCTION

This Report and Recommendation is made to the Honorable David W. Hagen, United States District Judge. The matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. Section 636(b)(1)(B) and Local Rules of Practice LR IB 1–4. Pending before the court is Plaintiff's Motion for Reversal/Remand (Docket # 9); Defendant's Motion for Summary Judgment and opposition to Plaintiff's Motion for Reversal/Remand (Docket # 15); Plaintiff's reply to Defendant's opposition to their Motion for Reversal; and Plaintiff's reply to Defendant's Motion for Summary Judgment (Docket # 16).

### ADMINISTRATIVE PROCEEDINGS

While the facts of this case have been essentially agreed upon by the parties, a short summary is still appropriate. (Docket # 15, pg. 1.) On August 13, 1986, Mrs. Meredith's husband Lynden R. Meredith, the wage earner [hereinafter "father", "Mr. Meredith" or "wage earner"], applied for Social Security retirement benefits. (AR 38.) At that time, Mrs. Meredith [hereinafter "Plaintiff"] applied for spouse's benefits under her husband's account. When Mr. Meredith began receiving his retirement benefits, Plain-

tiff also began receiving her full Wife's Insurance Benefits. (AR 38.) The Merediths have an adult daughter named Gail Meredith, [hereinafter "Gail"] who on August 14, 1986, applied for Children's Insurance Benefits [hereinafter "CIB"] upon her father's account. (AR 242.) At the time Gail's father began receiving his retirement benefits, Gail was receiving Supplemental Security Income (SSI). (AR 39.) SSI is a needs based federal welfare program that does not require an employment history. However, Gail's SSI benefits required that she apply for any other benefits she might be entitled to, including CIB, under her father's account. (AR 40–41.) In January of 1989, Gail's CIB benefits were granted and subsequently the amount of benefits Plaintiff derived from Mr. Meredith's account decreased because of the application of the family maximum rule—Section 203(a) of the Social Security Act. (AR 244.) For Gail, receiving CIB made no difference to her financial situation because the CIB offset her SSI. Plaintiff, on the other hand, received reduced monthly spousal benefits and had to refund $1,107.00. (AR 46.) On December 8, 1993, a Request for Hearing was filed with the Administration's Office of Hearings and Appeals. (AR 17.) Claimant and counsel agreed to an on-the-record decision based on the record and supplemental briefs filed by both parties. (AR 17.) On September 26, 1995, ALJ Donald Jensen made his decision in favor of the Social Security Administration [hereinafter "Secretary" or "Administration"], holding that Plaintiff was not entitled to an increase in the benefits she derived from her husband's account even though her daughter (Gail) was not paid from the wage earner's account. (AR 17–21.) On June 7, 1996, the Appeals Court denied Plaintiff's Request for Review and on December 20, 1996, Plaintiff filed her Motion for Reversal with this court. (Docket # 9.) Since approximately March 1996, Gail has been employed full-time at John Ascuaga's Nugget in Sparks [1]. (AR 16, Exhibit "A".)

### ISSUES

The underlying issue is whether Plaintiff's benefits can be increased because Gail's ben-

---

1. Since Gail is not currently entitled to disability benefits because of her full-time employment, a terminating event has occurred to cut-off Gail's technical entitlement to CIB. The record does not contain information on exactly how long Gail has been working full-time.

efits, on the wage earner's account, have been reduced to zero due to Gail's prior receipt of disability insurance benefits [hereinafter "DIB"]. The procedural issues include defendant's Motion to Dismiss under Rule 19 and whether Plaintiff is barred from raising the family maximum issue.

## DISCUSSION

The ALJ takes the position that the only way the Administration can allow Plaintiff's benefits to increase is for Gail to withdraw her original CIB claim and pay back all the CIB benefits she has received prior to becoming eligible for her own DIB benefits. 20 C.F.R. § 404.640(b)(3) (1997). In addition, the Administration points out that the ALJ found that while Gail was "technically entitled" to zero CIB benefits under her father's account, a terminating event must intervene to cut off her CIB eligibility. Such an event would be marriage, death, etc., but not Gail's entitlement to her own benefits, on her own account. Because the ALJ found that no terminating event had occurred, he found Gail's entitlement barred any increase in Plaintiff's share of the wage earner's benefits.

Defendant argues that cases raised by the Plaintiff are barred because they raise issues new to this proceeding. In addition, Defendant states that Plaintiff's motion should be dismissed for failure to join an indispensable party under Fed.R.Civ.P. 19(a) and 12(b). The Commissioner joins the ALJ in pointing out the non-existence of a terminating event to cut off Gail's entitlement to CIB.

In contrast, Plaintiff argues practicalities, that one shouldn't count something that isn't actually there—since Gail has a zero entitlement to CIB, Plaintiff should receive her full share of the wage earner's benefits. Further, Plaintiff argues that a District Court case from Utah, *Reinkraut v. Shalala,* 854 F.Supp. 838, 840 (D.Utah 1994), is analogous and holds that the technical entitlement of a CIB recipient should not cause another family member to receive less in benefits than they would if the child wasn't technically entitled. *Id.* at 840. Additionally, Plaintiff contends that raising the *Parisi v. Chater,* 69 F.3d 614 (1st Cir.1995) family maximum

holding does not raise a new issue, merely a new argument.

This court finds that the reasoning articulated by the District Court in Utah and employed by Plaintiff demonstrates a clearer understanding of Congress's intent in regards to the Social Security Acts than that demonstrated by the Administration. Furthermore, while that decision does not bind this court, we would be remiss to ignore its rationalizations and analysis when confronted with a clearly analogous situation. But most importantly, this court finds that Gail is no longer entitled to disability benefits by virtue of her full-time employment at John Ascuaga's Nugget. Thus, a terminating event has intervened to cut off Gail's technical entitlement to CIB and SSI, relieving the Plaintiff of further decreases in her benefits because of the family maximum rule.

## ANALYSIS

Plainly, Gail was entitled to CIB on Mr. Meredith's account. (AR 242–44.) In fact, while she merited Social Security Insurance (SSI), she was required to apply for CIB or risk losing her SSI. Thus, in applying for CIB, the amount she received was discounted by the amount she already had in SSI. In this case, that meant Gail was entitled to **zero** CIB because her SSI entitlement was high enough to offset any gain the CIB might give her. Therefore, in a very practical sense, Gail received no tangible, present benefit from her entitlement to CIB and in return, her mother received less in spouse's benefits than she would without Gail's zero entitlement. In the absence of any event that automatically terminated Gail's benefits, the only way Plaintiff's benefits could increase was in the event this court found that: (1) Gail might voluntarily waive her CIB without the mandatory pay back; (2) Gail decided to withdraw her 1986 application for CIB and pay back the money she received through that program or; (3) A non-payable entitlement was counted as zero in computing family maximum values.

**I. Interpretation of 42 U.S.C. § 402(d)(1)—Automatic Termination of CIB**

This statute deals with events that automatically terminate a child's entitlement to

CIB, including: (1) the child's death; (2) marriage; (3) *loss of disability* or; (4) divorce of wage earning step-parent from natural parent. 42 U.S.C. § 402(d)(1)(D)–(H). But while the statute addresses naturally occurring terminating events, it ignores the potential for a voluntary waiver of these benefits by the child herself.

Here, Gail has met one of the criteria listed for an automatic termination of her CIB. Therefore, we do not need to look to the language of the statute itself to see how a voluntary waiver of her CIB might be possible. The fact that Gail is able to work full-time bars her receipt of further CIB or SSI benefits and further classification as a disabled person. 42 U.S.C. § 423(d).

*Applicable Legal Standards*

■ To be considered disabled, a person must be unable to do any substantial gainful work due to a medical condition which has lasted or is expected to last, for at least twelve continuous months. 42 U.S.C. § 423(d). The condition must be severe enough to keep a person from working not only in his or her usual job, but in any other substantial gainful work. *Id.* The medical condition must be disabling at a time when the person meets the earnings requirement. *Id.* A person's age, education, training, and work experience are taken into consideration. *Id.*

The Secretary has adopted regulations, authorized by 42 U.S.C. § 405(a), which establish a formalized sequential order of considerations used in determining whether a claimant is disabled. These are: (1) whether the person is working at a substantial gainful activity; (2) whether the person has an impairment which significantly limits his physical or mental ability to do basic work activities (and is thereby a "severe impairment"); (3) whether the person's impairment meets or equals a listed impairment in Appendix I and meets the duration requirement; (4) whether the impairment prevents the person

from doing past relevant work; and (5) whether the impairment prevents the person from doing other work.

Here, the court finds that Gail is not disabled as demonstrated by her ability to perform substantial gainful activity.[2] In fact, Debbie Johns, Gail's community trainer assigned to assist her in everyday living, has been trying to stop the SSI payments that continue to arrive for Gail in spite of her non-disabled status.[3] (AR 16, Exhibit "A".)

## II. IF GAIL WITHDRAWS HER CIB ENTITLEMENT, MUST SHE REPAY ALL THE BENEFITS SHE'S RECEIVED SINCE 1986?

■ Assuming arguendo, that Gail's full-time employment does not automatically terminate her entitlement forces an examination of Gail's alternate options available for discontinuing her CIB entitlement.[4] 20 C.F.R. § 404.640(b)(3) (1997) provides that an application may be withdrawn (CIB is not specifically mentioned) if all benefits already paid, based on the application being withdrawn, are repaid. The purpose of having the child pay back the benefits they have received upon their withdrawal from CIB is to protect the child's interests. This rule acts as a deterrent in the event a parent with pecuniary interests seeks to have his/her child relinquish the child's CIB for the parent's monetary gain. *Reinkraut,* 854 F.Supp. at 842.

Here, Gail is an adult with representation of her interests through the Washoe Legal Services (Docket # 16, Exhibit "B"). The intent behind this regulation was not to stop someone from voluntarily waiving a zero entitlement, but to protect an inadequately represented child from giving up his/her benefits. *Id.* Therefore, using this regulation under these circumstances seems inappropriate.

Plaintiff argues that § 404.640(b) (1997) is inapplicable to this situation because it ap-

---

**2.** Gail is not disabled if she participates in substantial gainful activity that provides more than $500 per month in income. 42 U.S.C. § 423(d). We are assuming in this case, because of the absence of data in the record, that Gail makes more than this amount.

**3.** The Social Security Administration admits payment is improper, but continues to send it.

**4.** This court finds that this issue has been settled by the fact of Gail's employment, but will continue the discussion arguendo.

plies only when someone wants to return to the status of never having received any benefits. (Docket # 9) Since Gail wants only to waive her current eligibility to benefits, she should not be forced to repay her past benefits. In *Chevron*, the court held where a statute is silent or ambiguous on an issue the court must address whether the administration's regulation is based on a permissible construction of the statute. *Reinkraut*, 854 F.Supp. at 841 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)). Generally, the administration's regulations are upheld unless found to be arbitrary, capricious, or manifestly contrary to the statute. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782–83. However, the Social Security Act is remedial and needs to be construed liberally. *Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir.1982); *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.1978) (holding that the Social Security Act is remedial and needs "to be construed liberally"). Thus, when looking at the regulations, we examine whether they serve the general purpose the Act means to promote. The general purpose of social security is to provide support for dependents. *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500–01, 41 L.Ed.2d 363 (1974).

Here, forcing Gail to repay her past benefits in order to waive her technical entitlement to CIB creates a hardship to Gail. There seems no reason to uphold § 404.640 when the deterrent rationale for the regulation has been invalidated by the fact that Gail is not actually giving up any present financial support. If this situation were a trade off between Gail's present financial well-being and Plaintiff's, this court might choose to find the implementation of the regulation valid.

Although the ALJ chose to distinguish *Reinkraut* from the facts before us, both cases deal with analogous facts and issues. There, David Reinkraut (the child) and his mother drew benefits from the father's account. David's withdrawal of benefits subsequently caused a reduction in his mother's benefits because the family went above the family maximum detailed in 42 U.S.C. § 402(k)(3)(A). Following this, David be-

came eligible for disability insurance benefits (D.I.B.) on his own account. *Id.* at 840. David encountered the same dilemma as Gail because his D.I.B. provided more income than the CIB, reducing his entitlement to CIB from his father's account to zero. *Id.* Yet, David was still technically entitled to CIB, thus continuing to reduce the amount his mother was given from the father's account. The Secretary refused to allow David to voluntarily waive his technical entitlement without paying back all the money he had received under CIB. *Id.* The ALJ found in favor of David's request, and the Appeals Council reversed. *Id.* at 842. The *Reinkraut* court reversed and found David **could** voluntarily waive his entitlement without being forced to repay his past CIB's. The court found that: (1) the silence of 42 U.S.C. § 402(d)(1) (automatic termination of benefit entitlement) did not foreclose the possibility that a CIB recipient could voluntarily forego his/her entitlement and; (2) in a case such as this, there was no rational basis for demanding repayment of past benefits as a condition of waiving future CIB benefits. *Id.* at 842–43.

The ALJ found that because Gail was represented and had specifically requested to waive her CIB entitlement, combined with the likelihood that plaintiff would predecease her, made *Reinkraut* distinguishable. (AR 19.) Yet, Gail's representation makes it more illogical that she be forced to repay her past benefits as a condition of waiving future CIB benefits. With the regulation's intent to protect children, the fact that a child is represented by counsel argues strongly that less paternalistic measures are necessary to safeguard the child's interests. While the fact that Plaintiff may predecease Gail is valid, this court sees nothing in the regulation (regarding the withdrawal of benefits) that this withdrawal is permanent and Gail can not reapply in the future. In fact, § 404.640(d) states that the effect of the withdrawal is as if the application were never filed. Therefore, in the event that Plaintiff does predecease Gail, and Gail can derive more money from CIB than her own disability benefits, she may re-apply under the wage earners account. However, this argument is moot given the fact that Gail is able to work full-

time, lives on her own and is no longer even entitled to disability benefits. (Docket # 16, affidavit "A".)

### III. PLAINTIFF ARGUES PARISI IS DISPOSITIVE OF THE FAMILY MAXIMUM ISSUE

While this court finds that Gail is not disabled and even if she were, she should not be required to repay back benefits, Plaintiff further contends that Gail's entitlement, valued at zero, should be counted as zero and should not influence the family maximum. (Docket # 9, pg. 8.) Although not binding on this court, *Parisi v. Chater*, 69 F.3d 614, 616 (1st Cir.1995) deals with the issue of counting a zero entitlement into the family maximum. The child in that case was receiving CIB on his father's account when his benefits decreased because of the technical entitlement of his father's wife (who was not his mother and with whom he did not reside). *Id.* at 616. There, the court found that entitled benefits that were never actually payable were not properly counted toward the family maximum cap in determining the amount of benefits another person was able to receive. *Id.* at 615. Although in *Parisi*, the child was suffering from the technical entitlement, the case stands for the proposition that a technical entitlement of zero should be counted as zero when computing family maximums. Considering that the purpose of the family maximum is to set a maximum that can be given from one wage earner's account, *Parisi* complies with this purpose.

### IV. BY CITING PARISI, HAS PLAINTIFF RAISED A NEW ISSUE THAT IS NOT PROPERLY INCLUDED IN THIS JUDICIAL REVIEW?

■ "[I]f petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum...." *Tejeda–Mata v. INS*, 626 F.2d 721, 726 (9th Cir. 1980); *See Chung Young Chew v. Boyd*, 309 F.2d 857, 861 (9th Cir.1962) (holding that failure to take available appeal to Board of Immigration Appeals constitutes failure to exhaust administrative remedies and deprives the Court of Appeals of jurisdiction to review). Yet, in *Tejeda–Mata* the court held

this "in the absence of any reason justifying Petitioner's decision to raise for the first time in this court the issue...." *Tejeda–Mata*, 626 F.2d at 726.

Defendant contends that Plaintiff's failure to raise the issue addressed in *Parisi* (of only counting benefits actually payable), is an issue not raised before in any of the administrative hearings. (Docket # 15, pg. 2) They argue this failure deprives this court of judicial review over this issue. (Docket # 15, pg. 2.) However, Plaintiff argues the family maximum issue has always been before the court, and the *Parisi* holding is just another argument addressing the same, old issue. (Docket # 16, pg. 3–4.)

The single, certain, material point put in controversy by the pleadings has always been whether Plaintiff could get an increase in her spousal benefits because Gail was not actually receiving any money from the wage earner's account. (Docket # 9.) This court agrees with Plaintiff that the *Parisi* argument is merely another way of addressing this primary issue. Yet, even if this issue was being raised for the first time here, *Tejeda–Mata* allows for justifications for the delay in submitting an issue. *Tejeda–Mata*, 626 F.2d at 726. Considering that *Parisi* was decided on November 8, 1995, eight days before the appeal by Plaintiff to the Appeals Council, and the ALJ hearing was months before this, it seems excusable that this case was excluded from earlier administrative proceedings. While *Tejeda–Mata* doesn't outline what particular justifications might be reasonable, in view of the *Parisi* time line, the court feels this delay was within an acceptable range.

### V. SHOULD THIS ACTION BE DISMISSED UNDER RULE 19?

Whether an action should be dismissed under Rule 19 involves a two step process: (1) the court must decide whether the absent party should be joined as a necessary party under Rule 19(a), and; (2) if the absent party is necessary and cannot be joined, then the court must decide if "in equity and good conscience" the action should be dismissed because the nonparty is indispensable. *Ma-*

*kah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir.1990).

(1) In order to determine if the absent party is necessary to the suit; (a) a court must determine if complete relief is possible among those already parties to the suit and; (b) whether the absent party has a legally protected interest in the suit. *Id.* at 558. This interest must be more than a financial stake, and more than speculation about a future event. *Northern Alaska Environmental Center v. Hodel*, 803 F.2d 466, 468 (9th Cir.1986); *See McLaughlin v. International Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir.1988) (holding that speculation about a future event is inadequate interest in a suit); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1045 (9th Cir.1983) (holding that speculation about occurrence of future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties).

Defendant makes this motion to dismiss under Rule 19 with regard to Gail Meredith. The Commissioner contends that in Gail's absence, the court cannot afford complete relief to the parties. (Docket # 15, pg. 9.) Additionally, she argues that Gail has a legally protected interest in the suit. (Docket # 15, pg. 9.) Plaintiff argues that Gail is not an indispensable party because this suit does not compromise her interests, she is not needed for complete relief and there is no risk of inconsistent rulings or prejudice to either party. (Docket # 16, pg. 12.)

### a. Does Gail have a legally protected interest in the suit?

■ Gail's interest is of a financial nature (whether she will be able to receive CIB in the future if her mother dies before she does) and revolves around future speculation. Therefore, under Ninth Circuit case law, Gail does not have a legally protected interest in the suit. Furthermore, it is probable that Gail will never be entitled to future benefits, in light of her full-time employment, which negates any future DIB under 20 C.F.R. § 404.1566 (1997).

Even if Gail does have an interest in this suit, it is tenuous enough to be successfully challenged by the *Northern Alaska* and *McLaughlin* holdings. At the present time she does not receive any financial support from her father's benefits. If her mother's benefits were to increase, Gail might benefit from her parent's somewhat enhanced financial positions. Even if Gail does not profit from her mother prevailing in this case, she may only be harmed in the event her mother predeceases her, she then becomes eligible for disability (she isn't eligible presently, See Docket # 16, affidavit "A".), and then is not able to take advantage of the technical entitlement she presently proposes to extinguish. These circumstances certainly sound speculative enough about a future event to invoke the *McLaughlin* holding and deny Gail's interest in the present suit.

### b. Can complete relief be granted among those already parties in the suit?

■ Complete relief affords the Plaintiff all the relief they have sought. *Confederated Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500–01 (9th Cir.1991) (O'Scannlain, J., concurring in part and dissenting in part) ("the relevant question for Rule 19(a) must be whether success in the litigation can afford the plaintiffs the relief for which they have prayed."). In addition, "it must be noted that complete relief refers to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N.Cal. Counties Joint Apprenticeship and Training Comm.*, 662 F.2d 534, 537 (9th Cir.1981). By following the *Parisi* line of reasoning, this court's decision would afford Plaintiff all the relief she requests. The Administration would proceed to count entitlements that are not actually payable as zero when they compute the family maximum, thereby increasing Plaintiff's spousal benefits. Furthermore, because this court endorses the *Reinkraut* rationale, Plaintiff's benefits would also increase due to Gail's ability to waive entitlement to her non-payable CIB's. In either case, Plaintiff is afforded her prayer for relief, and this relief is between Plaintiff and the Administration, both parties already in this suit. Since Gail is not a necessary party under Rule 19(a), this court does not need to

consider whether joinder is feasible, and if not, whether Gail's presence would be indispensable. *Northrop Corp.,* 705 F.2d at 1042.

## SUMMARY

In conclusion, this court finds that because Gail is working full-time, her entitlement to disability benefits is extinguished. With this extinguishment, Plaintiff's benefits on the wage earner's account should necessarily rise to the level they were before Gail was entitled to benefits on her father's account. In the event Gail's employment was not a terminating event, this court finds that Gail should be able to withdraw her technical entitlement without having to repay the benefits she has received in the past. Furthermore, this court finds that in computing a family maximum level, a zero entitlement should be counted as nothing. Additionally, Plaintiff has not raised a new issue and this action should not be dismissed for failure to join an indispensable party.

## RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends that the District Court issue its order **GRANTING** Plaintiff's Motion for Reversal and **DENYING** Defendant's Motion for Dismissal under Fed.R.Civ.P 12(b)(7).

DATED this 8th day of August, 1997.