**James W. McANINCH for Kimberly McANINCH, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 87–226 Erie.**

United States District Court, W.D. Pennsylvania.

Sept. 1, 1988.

Michael R. Smalz, Northwestern Legal Services, Franklin, Pa., for plaintiff.

Albert W. Schollaert, Asst. U.S. Atty., Erie, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

Kimberly McAninch, the daughter of James M. and Barbara J. McAninch, received child's benefits from 1972 until 1979 based on her disabled mother's earnings record. Transcript at 169. Barbara McAninch had become disabled effective April, 1972. *Id.* at 169, 170. In 1979, Kimberly's father was also awarded disability benefits and because Kimberly was entitled to higher benefits under her father's account, she was transferred to his account and began to receive a higher benefit payment based on his earnings record. *Id.* at 29, 30.

Mr. McAninch wanted to attempt to return to the workforce even though his medical condition was not expected to improve. *Id.* at 81. He began to work as a substitute aide to retarded people in a group home at minimum wage on an intermittent, part-time basis in December, 1983. *Id.* at 45, 59, 80. He was granted a nine-month trial work period, pursuant to 42 U.S.C. § 423(a)(1)(D), beginning December, 1983, during which time both he and Kimberly continued to receive monthly benefits on his account. *Id.* at 31, 32. Because in February and March of 1984 Mr. McAninch's earnings were less than the allowable $75.00 per month, those two months were not counted as part of his trial work period and his trial work period was extended to October, 1984. *Id.* at 84, 85, 102. In July, 1984 he began working 32 hours per week (sixteen hours each on Saturday and Sundays) with a pay increase to $3.68 per hour yet still without fringe benefits such as sick time, vacation time or insurance. *Id.* at 86. Nonetheless, he was earning more than $300.00 per month, *Id.* at 79, 85, the level at which work is considered substantial gainful activity. 20 C.F.R. 404.1574(b)(2)(vi). The Secretary determined that Mr. McAninch had completed the trial work period in October, 1984. *Id.* at 84. From November, 1984 until February, 1986 he was placed on an "extended period of eligibility," during which his benefit payments were suspended because of his employment, although he was still considered "eligible" for disability benefits should he decide to stop working. *Id.* at 117. The last benefit check to which he was entitled was for the month of January, 1985, which he received in February, 1985. The Secretary states that had Mr. McAninch ceased working and earning $300.00 per month at any time during this period, his benefits, as well as his daughter's benefits, would immediately have been reinstated. Mr. McAninch continued to work nonetheless.

Both Mr. McAninch and his daughter received benefit checks for February, 1985. Mr. McAninch, acting to avoid overpayment, contacted the district office and returned his benefit check for February, 1985 to the defendant on March 15, 1985. *Id.* at 134, 135. He did not, however, return Kimberly's check for February, 1985, because by the time the defendants had notified Mr. McAninch on April 2, 1985 that Kimberly was not entitled to the February, 1985 benefit check, the money had already been spent on her. *Id.* at 129, 130. Be-

cause Mr. McAninch's last bona fide benefit check was for the month of January, 1985, and Kimberly received a check for February, 1985, the Secretary claims that Kimberly was overpaid $292.00 for the month of February, 1985. *Id.* at 109. Mr. McAninch agrees that he should refund the difference between the amount paid Kimberly on his account ($292.00) and the amount she would receive on her mother's account for that month ($244.00), or $48.00.

Upon realizing that his suspension of benefits due to his trial work period meant that his daughter was being denied benefits under either account, Mr. McAninch requested, in June, August and November of 1985, a termination of his 15 month "re-entitlement" retroactive to February, 1985. *Id.* at 118–119. By November, 1985, the Secretary had yet to deny McAninch's request, instead advising him that his wife should formally protest the denial of benefits to Kimberly. *Id.* at 119. Finally, on January 17, 1986, the Social Security Administration notified Mr. McAninch of their denial of his requests to transfer Kimberly to her mother's account or to terminate his disability eligibility. *Id.* at 122–23. They stated that Kimberly could not be transferred to her mother's account because of Kimberly's technical entitlement on his account and could not be entitled on her mother's account until February, 1986 when her father's extended period of eligibility would end; that is, not until his eligibility for benefits was terminated in February, 1986. *Id.* at 121–123. Therefore, Kimberly received no benefit checks during the year between February, 1985 and March, 1986.

On January 13, 1986, James and Barbara McAninch filed for bankruptcy under Chapter 13. *Id.* at 147. They listed Kimberly's $292.00 benefit check among their debts, as well as medicare payments the Secretary alleged that Mr. McAninch owed for payments made by the defendant during his 15 month "re-entitlement" period. *Id.* at 139–150.

Kimberly resumed receiving benefit payments on her mother's account in March, 1986, the month after her father's extended period of eligibility ended. The McAninchs requested a hearing on March 10, 1986, and Administrative Law Judge Andrew J. Tranovich conducted a hearing on November 16, 1986 concerning Kimberly's entitlement to benefits under her mother's account during the period from February, 1985 to February, 1986, as well as whether an overpayment had occurred for Kimberly for February, 1985. On February 5, 1987 the ALJ issued a decision finding Kimberly eligible for benefits on her mother's account effective February, 1985 and ordering the Secretary to make payments accordingly. *Id.* at 10–13. On February 19, 1987, the Mid–Atlantic Program Service Center requested review of the ALJ's decision. On April 1, 1987 the Appeals Council granted such a review and on July 17, 1987 reversed the ALJ and denied benefits to Kimberly. This became the final decision of the Secretary, and this appeal followed.

### Discussion

■ The Secretary advances a most disingenuous argument to support its interpretation of the governing statute, 42 U.S.C. § 402(k)(2)(A). It is this Court's view that Congress enacted this statute to grant benefits to children to alleviate economic hardship facing families who have lost a wage earner due to disability. *See* Sen. Rep. No. 2388, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Admin. News 4218–19, 4221, 4272. Numerous courts have found it to have been Congress's intent that this provision be liberally interpreted so as to place into the hands of the child the largest payment possible. *See, e.g., Damon v. Secretary of H.E.W.,* 557 F.2d 31 (2d Cir.1977); *Eisenhauer v. Mathews,* 535 F.2d 681 (2d Cir.1976); *Broussard v. Weinberger,* 499 F.2d 969 (5th Cir.1974); *Haberman v. Finch,* 418 F.2d 664 (2d Cir.1969). The Secretary, however, takes a much more hardfisted approach toward children with two disabled parents.

We think it best to quote the Secretary's own brief to give its side of the argument. The government's brief explains that when a child is simultaneously entitled to benefits from either parent, "[o]rdinarily, a

child will receive only the benefit based on the account of the insured individual with the highest primary insurance amount (in this case, Kimberly's father)." Secretary's Brief at 4. "Since she remained entitled to benefits on her father's account—which had the greatest primary insurance amount—during his fifteen-month period of extended eligibility, since her mother's account bore a lower primary insurance amount, and since the exception [for children with a deceased parent] did not apply to her, the Act did not permit Kimberly's transfer to her mother's account." *Id.* "Furthermore, if Congress had intended that a child in Kimberly's situation should simply receive the largest amount payable to her, it could have said so, as it did in other sections of the same statute." *Id.* The government's brief then notes that individual's eligible for more than one widow's or widower's benefit is entitled to the one that yields the largest amount possible. The government does not attempt to explain why Congress might have intended to altogether deny children their benefits (although when paying benefits, paying based on the account with the highest insurance amount) yet give the highest possible amounts to widows and widowers. The obvious answer, we think, is that Congress never intended for children's, widow's or widower's benefits be completely cut off merely because a beneficiary is eligible under two wage-earner accounts instead of just one.

Under the Secretary's child benefit policy, Kimberly's undoing was that she had two parents on disability, rather than just one. Mr. McAninch, in a desperate attempt to circumnavigate the Secretary's contorted logic, requested in the summer of 1985 that his disability benefits be terminated altogether, leaving only Kimberly's mother eligible for disability and leaving the Secretary a simpler choice of which account his daughter's benefits should be drawn. Not surprisingly, the Secretary had a "Catch–22" response even to this offer:

"When a claimant requests that his benefits be terminated, only *payments* may be stopped. The determinations of *eligibility* for benefits and *when a disability*

*ends* rest solely with the Secretary." 42 U.S.C. 402, 20 C.F.R. 404.1503. When Mr. McAninch requested that his benefits be terminated, *payments* were in a suspended status, but his extended period of eligibility, as determined by the Secretary, continued until February 1986.

Secretary's Brief at 6 [emphasis in original]. Thus, because the Secretary did not deign to grant Mr. McAninch's request to terminate his disability eligibility, wishing instead to keep him in "suspended status" pending completion of his fifteen-month extended period of eligibility. Because her father was still "eligible," Kimberly's benefits could not be transferred to her mother's account. Kimberly would just have to do without for a year, a year in which her parents ultimately filed for bankruptcy.

The ultimate irony of this case, and the point on which the Secretary's arguments reach the height of their folly, is that the McAninch's problems with the Secretary stemmed from Mr. McAninch's desire to attempt to get off disability and return to work. Congress enacted 42 U.S.C. § 423(a)(1)(D) to provide better work incentives for disabled workers. Prior to 1980, a disabled wage earner who successfully returned to the work force would receive benefits for three months following completion of the nine-month trial work period. Congress concluded that the nine-month trial work period did not provide a strong enough incentive for workers to risk having to reapply for benefits and go through the long and involved determination process should their impairment cause them to stop working. Congress rectified the situation by amending the statute to extend the nine-month period to twenty-four months, with cash payments not being paid in the final twelve months unless the worker failed to earn substantial gainful wages. It is clear, therefore, that Congress meant to assure disabled wage earners that for two years they could attempt work without worry about losing their entitlement to benefits. *See* 1980 U.S.Code Cong. & Admin.News 1280, 1328–1329. Unburdened by concern for Congress's intent, the Secre-

tary in this case simply stated conclusorily that since 42 U.S.C. § 423(a)(1)(D) "prohibits the payment of child's benefits under 42 U.S.C. 402(d) to the child of an individual in the last 12 months of his fifteen-month period of eligibility, Kimberly's benefit payments were suspended as well." Secretary's Brief at 4. We think it obvious that where a family has two parents and a dependent child receiving disability benefits, and one parent attempts to reenter the work force, the last thing Congress intended was to punish that family by refusing to pay benefits to the dependent child during the trial work period.

How can the Secretary's attorneys justify a policy which would gladly grant benefits to Kimberly if her father was not disabled and only her mother were disabled, but denies benefits when both her parents are disabled and one parent is attempting to overcome his afflictions and reenter the workforce on a trial basis? There simply is no rational explanation to support the Secretary's position.

We think Administrative Law Judge Tranovich's decision best summarized the reasons which support granting these benefits to Kimberly:

> The benefit was to be calculated based on the earnings record of the individual with the highest primary insurance amount. In the instant case, the highest primary insurance amount would be the earnings record of James W. McAninch. However, when such benefits would be larger when calculated under the earnings record with a lower primary insurance amount, the child was entitled to the larger benefit provided that the benefits payable to any other person would not be reduced. There is absolutely no evidence of record that payment of child's insurance benefits under the earnings record of Barbara J. McAninch would result in a lower payment payable to any other individual. As the benefits payable to Kimberly McAninch would be greater under the earnings record of Barbara J. McAninch due to the suspension of benefits under the earnings record of James W. McAninch, the claimant is entitled to payment of child's in-
> surance benefits under the earnings record of Barbara J. McAninch. The Social Security Act makes no statement concerning when redeterminations of these kinds must be made. There is no statutory authority for the Social Security Administration's position that these determinations can only be made on the occurrence of one of the four events listed in Exhibit 28. The Regulations also do not make any such provision. The Administrative Law Judge also notes that such an interpretation would clearly be against the clear intent of the Social Security Act to provide benefits to dependent children of disabled wage earners.

Trial Transcript at 12. We heartily agree with the ALJ's factual and legal analysis, and we find no substantial evidence to support the Appeals Council's decision.

■ The Appeals Council stated that its conclusion was directed by Social Security Ruling 83–23a, a case with very similar facts to this one and in which the Secretary similarly prohibited transfer of a child's benefits from the account of one eligible parent, whose benefits were suspended when he returned to work, to the other disabled parent. SSR 83–23a. Because SSR 83–23a is so factually similar to the case at bar, we have no difficulty in finding that it also violated the letter and the spirit of the Social Security Act and was wrongly decided. We hope that the Secretary does not again use it to justify the denial of benefits to other deserving children of disabled parents.

Just how far the Secretary departed from Congress's intent is best told in Mr. McAninch's words, recorded at the ALJ's hearing:

> Well, to put it bluntly, [returning to work] just wipe me out.... I liked to work and I don't think there is no harm in that.... I shouldn't even went back to work.... they took my daughter's benefits away from, and I lost everything. I lost—We had to go bankrupt, because I couldn't pay my bills.

Transcript at 43. We find the Defendant's actions and statutory interpretation to be small-minded at best and unscrupulous at worst. Frankly, we do not understand how such an egregious case of bureaucratic insensitivity and miserliness could have reached this Court. We certainly do not understand how the Secretary and his attorneys expected summary judgment in their favor. We will reverse the Appeal Council and grant benefits to Kimberly McAninch.

### ORDER

AND NOW, this 1st day of September, 1988, after careful consideration of the Plaintiff's and Defendant's Motions for Summary Judgment, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that:

(1) Defendant Otis R. Bowen, M.D., Secretary of Health and Human Services's, Motion for Summary Judgment is DENIED;

(2) Plaintiff James W. McAninch for Kimberly McAninch's, Motion for Summary Judgment is GRANTED;

(3) Judgment is entered in favor of the Plaintiff, James W. McAninch for Kimberly McAninch, and against the Defendant, Otis R. Bowen, M.D., Secretary of Health and Human Services.

(4) Defendant Otis R. Bowen, M.D., Secretary of Health and Human Services's denial of Plaintiff's claims for disability insurance benefits is reversed and benefits are awarded to the Kimberly McAninch, under the account of Barbara J. McAninch, effective from February, 1985, with a deduction being made for the amount already paid to Kimberly McAninch for the month of February, 1985.