1. Pursuant to P.L. No. 103–296, and Fed.R.Civ.P. 25(c), the Commissioner of the Social Security Administration, Shirley S. Chater, is hereby sub-

Accordingly, the Defendants' Motion for Summary Judgment is hereby GRANTED. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Burke **ANDRE, et al., Plaintiffs,**

v.

**Shirley S. CHATER,[1] Commissioner of the Social Security Administration, Defendant.**

**No. IP 94–1567–C M/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Dec. 18, 1995.

stituted as the named defendant for Donna E. Shalala by the Court's own motion.

Kenneth J. Falk, Jamie Andree, Legal Services Organization of Indiana, Indianapolis, Indiana, for Plaintiffs.

Sue Hendricks Bailey, Asst. U.S. Atty., Office of the United States Attorney, Indianapolis, Indiana, for Defendant.

### ORDER ON CLASS CERTIFICATION AND SUMMARY JUDGMENT

McKINNEY, District Judge.

Burke and Justin Andre, by their mother and next friend, Doris Andre, brought this action on their own behalf and on behalf of all others similarly situated pursuant to Fed. R.Civ.P. 23(b)(2).[2] The proposed class action seeks declaratory and injunctive relief against Shirley S. Chater, Commissioner of the Social Security Administration. The proposed class is defined as:

> All children, past, present and future, both of whose parents are disabled and who have been, are being, or will be denied child's insurance benefits drawn on the account of their parent with a lower primary insurance amount (PIA) because their parent with the higher PIA has had his or her benefits suspended during an extended period of eligibility.

The Court has jurisdiction of this matter under Section 205 of the Social Security Act (the "Act"). 42 U.S.C. § 405(g).[3] The proposed class challenges the methodology used by the Commissioner to determine when, how and whether dually entitled children's eligibility for benefits can be transferred from the account of the parent with the higher PIA, whose benefits have been suspended during an extended period of eligibility, to the account of the parent with the lower PIA.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Burke and Justin Andre are the minor children of Doris and George Andre, who are divorced. They live with their mother, Doris, in Sunman, Indiana. Both Doris and George have been determined to be disabled by the defendant, and were receiving Social Security benefits prior to the events underlying the dispute in this action. The children received benefits on the account of their father, who had the higher PIA, until January 15, 1992, when the Social Security Administration (the "Administration") notified them that their benefits would cease because George was no longer considered disabled. Having completed a nine month trial work period in October, 1991, George became entitled to an extended period (thirty-six months) of eligibility.[4] As a consequence, neither George nor the children could receive benefits unless George ceased working and was determined again to be disabled. R. 72–76, Exs. 16 and 17.

After receiving the notice of suspension of their benefits, the Andres asked for reconsideration and a hearing before an Administrative Law Judge ("ALJ"). The initial denial of benefits was affirmed on reconsideration, but the ALJ, without a hearing, reversed that decision and issued a fully favorable decision for the Andres on May 26, 1993. R.

**2.** The Federal Rules allow a case to proceed as a class action if certain prerequisites are met. Parties may sue on behalf of all others similarly situated only if:

 1) the class is so numerous that joinder of all members would be impracticable;
 2) if questions of law or fact are common to the class;
 3) if the claims or defenses of the representative parties are typical of those of the class; and
 4) if the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

Rule 23(b)(2) provides that if the requirements of 23(a) are met, a class action is maintainable "if the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;''.

**3.** Initially plaintiffs claimed that the Court had jurisdiction under 28 U.S.C. § 1331 (federal question), but that contention has since been voluntarily dropped.

**4.** Pursuant to 20 CFR § 404.401a, an otherwise eligible Social Security claimant may continue to receive benefits during a specified period of substantial gainful employment. At the end of that period, the Act provides an additional period of time during which the claimant will not receive benefits, but could resume benefits in the event he or she ceases to be substantially gainfully employed, without having to re-apply for benefits. 42 U.S.C. §§ 423(e), 425. When children are receiving benefits on the account of a person whose benefits are suspended during an extended period of eligibility, their benefits also will be suspended.

9–15. The ALJ created a record of all the pertinent documents and found that Burke and Justin Andre's eligibility for benefits should be transferred to their mother's account, and that they were eligible for benefits from her account beginning in January, 1992, when their father's benefits ceased.

On October 15, 1993, the Appeals Council notified the parties that it had decided to reopen the ALJ's decision. After allowing the Andres time to respond, the Appeals Council reversed the ALJ's decision September 9, 1994, and held that the children may not elect to receive child's insurance benefits on the account of their mother. That decision, which was based in part on Social Security Ruling ("SSR") 83–23a, became the final decision of the Commissioner. The policy revealed by this decision is applied uniformly to all children who are similarly situated to the Andres. Answer, ¶ 27.

The Andres timely commenced this civil action on November 1, 1994, seeking this Court's review of the actions of the Appeals Council. They claim that their due process rights were violated when the Appeals Council decided *sua sponte,* more than sixty days after the ALJ's decision, to review that decision. Alternatively, they argue that the Appeals Councils' action violated the Agency's own regulations, specifically 20 CFR §§ 404.987–989, which provide the grounds for and timing of a decision to reopen a determination. Beyond this procedural claim, the Andres contend that the Appeals Council decision to deny the children the opportunity to transfer their benefits from their father's account to their mother's, was a violation of 42 U.S.C. § 402, which authorizes the payment of child insurance benefits in circumstances such as these. Finally, the Andres claim that the Commissioner's continuing policy of refusing to allow children to receive benefits on the account of their parent with the lower PIA, when the parent with the higher PIA ceases to receive benefits but remains technically eligible, is arbitrary, irrational and in violation of the due process clause of the United States Constitution. The issues have been fully briefed and this matter is now ripe for resolution.

## II. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When the standard embraced in Rule 56(c) is met, summary judgment is mandatory. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992). As stated in *Celotex,* summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55; *see United Ass'n of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1267–68 (7th Cir.1990), *cert. denied,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991).

The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment; disputed facts must be outcome determinative. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Schroeder v. Barth,* 969 F.2d 421, 423 (7th Cir.1992). The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 360 (7th Cir.1992). Irrelevant or unnecessary facts do not preclude summary judgment even when in dispute. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992).

## III. DISCUSSION

Before resolving the pending motion for summary judgment, and to determine the

number of persons affected by any decision on the merits, the Court must first consider the arguments regarding class certification. Plaintiffs have moved for prospective relief for all members of a defined class, and have also sought retroactive relief for themselves and others similarly situated. Specifically, the Andres ask this Court to reverse the decision of the Appeals Council on two separate grounds. First, the Andres seek reinstatement of the ALJ's decision in their individual claims on grounds that the Council's review of that decision was untimely. Second, on grounds applying to the entire class, the Andres seek a holding that the policy used to defeat their claims for benefits is unlawful.

In essence, plaintiffs are asking this Court to pave the way for all who are similarly situated to them (*i.e.* that have been denied children's benefits when one of their two disabled parents returns to work), to obtain their children's benefits under the Act. They also seek an injunction that will ensure that no children in the future, who find themselves in the same position as the Andres, will have their benefits denied for the same reason the Commissioner uses here.[5]

### A. CERTIFICATION

Two key inquiries must be pursued to determine whether class certification is proper in this case. First, the Court must assure itself that it has jurisdiction to decide the merits, and second, the requirements of rule 23 of the Federal Rules of Civil Procedure must be met. Defendant urges that the Court may have jurisdiction to resolve the Andres's individual claims, but that jurisdiction does not exist to resolve the claims of many of the members of the class.

Citing the requirements of § 205(g) of the Act, Defendant argues that members of the proposed class fail to meet certain of its jurisdictional requirements. *See* 42 U.S.C. § 405(g) ("§ 405(g)"). Section 405(g) jurisdiction depends on two primary requirements. First, to invoke a court's jurisdiction a social security claimant must have received a final decision from the agency (the "Final Decision Rule"). *Johnson v. Sullivan,* 922

F.2d 346, 352 (7th Cir.1990). Second, the claimant must file an appeal with a district court within sixty (60) days of that final decision (the "Sixty Day Rule"). *Id.*

▮ The Final Decision Rule likewise consists of two separate inquiries, the first being presentment, and the second, exhaustion of administrative remedies. Presentment, which is jurisdictional and nonwaivable, means that the claimant has presented a claim for benefits to the Administration. *Bowen v. City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Exhaustion of remedies is not jurisdictional and is waivable under certain circumstances. The other requirement for § 405(g) jurisdiction, the Sixty Day Rule, is considered a statute of limitations. It is also waivable under equitable tolling principles, such as when a claimant has met the requirements for waiving exhaustion of remedies. *City of New York,* 476 U.S. at 479–80, 106 S.Ct. at 2029–30; *Johnson,* 922 F.2d at 355.

#### 1. Final Decision Rule

#### a. Presentment

▮ Presenting a claim to the Commissioner means that the claimant has at least made an initial application for benefits under the Act. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). Plaintiff concedes that the language defining its class contemplates that certain members have not yet applied for children's benefits. Defendant argues that the fact that those members do not have "live" claims means the Court has no jurisdiction over a class consisting of such members. The significance of that fact, however, lies not in its ability to defeat certification of the class, but rather, the absence of a live claim prevents certain potential class members from enjoying the relief offered by a favorable judgment until they apply for benefits.

The Andres are cognizant of the fact that members of the class who have not presented

---

5. The prayer for relief also seeks an award of Justin and Burke's benefits on their mother's account, and an award to all class members of

the benefits they would have received but for the unlawful policy. An award of attorneys' fees and costs is also sought.

a claim to the Commissioner will not actually be covered by any order or judgment until they do so. In effect, the class is subject to growth in the future. *See Hill v. Sullivan,* 125 F.R.D. 86, 94 (S.D.N.Y.1989). Consequently, the absence of a "live" claim by some class members, in the sense of one that has been presented to the Administration, is of no consequence to class certification, unless no class members have live claims. That is not the case because the Andres, at least, do.

Defendant's argument against certification on grounds that the class as defined includes persons who have never presented claims to the Commissioner would have merit if the class action were only seeking retroactive relief, such as restoring benefits to those claimants denied them. However, the Andres are seeking prospective relief for all members of the defined class, as well as retroactive relief for themselves. *See Hill,* 125 F.R.D. at 94 (finding that the class was prospective and that jurisdiction would obtain over prospective members only after they presented a claim to the Administration). Since prospective relief looks to the future, it follows that the class of claimants to which this decision will apply should be subject to addition of future members.

In *Hill,* the court noted that including claimants in the class as they file claims does not violate the jurisdictional requirement of § 405(g), because no order or judgment of the court would bind them until they did present a claim. *Id.* Consequently, this Court may certify the class despite its inclusion of future members, provided that the exhaustion of remedies requirement has been met or is found to be properly waived.

#### b. Exhaustion of Remedies

█ Certification should also be denied, the Commissioner argues, because some proposed class members have failed to exhaust their administrative remedies. If this is true, the next inquiry should be whether the grounds for waiving exhaustion are present. Exhaustion of remedies may be excused if the claims at issue are collateral to the individual claims for benefits, and if requiring exhaustion would lead to irreparable harm and would not further the purpose behind the exhaustion requirement. *City of New*

*York,* 476 U.S. at 482, 106 S.Ct. at 2031; *Marcus v. Sullivan,* 926 F.2d 604, 613 (7th Cir.1991); *Johnson,* 922 F.2d at 352. The policies behind the exhaustion of remedies requirement are to:

1. prevent premature interference with agency process;

2. allow the agency to function efficiently;

3. give the agency an opportunity to correct its own errors;

4. let the court and parties benefit from agency expertise; and

5. compile a record adequate for judicial review.

*City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032.

Defendant, sometimes by implication and sometimes expressly, argues that each member of the class must have exhausted his or her remedies for this Court to have jurisdiction over a class action in this case. Such a narrow construction of the rules relating to class actions and the jurisdictional requirements of the Act are not necessary. If the Court lacks jurisdiction over some class members, the remedy is to modify the definition of the class, not deny certification altogether. Defendant also argues that because the Andres seek payment of their disputed benefits, the issue before this Court is not collateral to their claim. Further, because the Andres have not claimed irreparable harm if exhaustion is required, Defendant claims that waiver of the exhaustion requirement would be improper.

█ The Andres argue that the Commissioner's continuing policy of refusing to transfer dually entitled children from the account of the parent with the higher PIA, whose benefits have been suspended, to the account of the parent with the lower PIA, is based on an unpromulgated social security ruling, or a system-wide unrevealed policy. A dispute about the validity of generally applied policies is collateral to the merits of the claims of any individual class members. *Marcus,* 926 F.2d at 614. Moreover, the purpose behind the collateral requirement is to prevent the court's untimely interference with agency processes. The test to determine if an issue is collateral is not whether

the court's decision will result in another consideration of the merits of the class members' claims, but rather whether the plaintiffs' challenge of the agency's policy is bound up with the merits so closely that a court's decision would constitute "interference with agency process." *Johnson,* 922 F.2d at 353. Such interference may be warranted under certain circumstances, such as when the court determines that exhaustion of remedies would be futile. *Id.* (citing *City of New York,* 476 U.S. at 485, 106 S.Ct. at 2032–33).

 Given that at least three district courts have ruled against the policy at issue, or a similar one, and that one of those courts specifically instructed the Administration to stop using the policy to deny benefits, the fact that, in this case, the Secretary again denied benefits pursuant to the same policy leaves no doubt that this Court's interference is warranted. Such interference seems necessary to challenge agency processes that are out of sync with the purpose behind children's insurance benefits. To require exhaustion of remedies by all class members would be futile, in addition to subjecting them to potential irreparable harm.

The Administration admits that its actions were taken in pursuit of its "policy on handling 'simultaneous entitlement' cases." R. 79–80, Ex. 20 (Letter from Social Security Administration District Manager to Rep. Lee Hamilton). Such a policy is not apparent on the face of the statute or in the regulations. As the Andres admit, that policy is apparent in SSR 83–23a, a copy of which is attached to their brief in support of summary judgment.[6] In addition, the Agency states that, according to its policy, the method for determining the proper record on which to pay children's insurance benefits is reevaluated only when certain events occur, and the suspension of benefits of the parent with the higher PIA is not one of the triggering events for such redetermination. *Id.* Nowhere does the Agency justify this policy with a citation to

Congressional authority or a promulgated regulation, nor could this Court find any justification. Absent clear authorization for an internal policy that deprives beneficiaries of their benefits, the agency is vulnerable to a general challenge to the policy. Such a challenge is independent of the merits of any individual claim. Consequently, a dispute about the validity of this unpromulgated policy is certainly collateral to any individual claim for benefits.

 Turning to the irreparable harm inquiry, the Court finds that the Andres have shown that such harm would follow if each class member were required to exhaust all administrative remedies before benefitting from a favorable judgment in this case. Irreparable harm can be defined as harm that cannot be adequately compensated at a later time. Given the disabilities of the parents of the class members, it is obvious that they need their benefits to meet the necessities of life. The Andres have lost most of their income as a result of the denial of benefits for them. By requiring each class member to exhaust his or her administrative remedies before the Commissioner will be ordered to cease denying benefits under her current allegedly unlawful policy, would mean that benefits would be delayed to those who desperately need them.

 The Seventh Circuit has even more strongly stated the hardship. "A delayed receipt of disability benefits ... cannot suffice to make the claimant whole. Any delay potentially subjects claimants to deteriorating health, and even death." *Marcus,* 926 F.2d at 614 (citing *Schweiker v. Chilicky,* 487 U.S. 412, 428, 108 S.Ct. 2460, 2470, 101 L.Ed.2d 370 (1988)). The Commissioner's own agent has admitted that strict application of the rules has produced an unfair and inequitable situation. R. 80, Ex. 20 at 2. Courts "should be especially sensitive to this

---

6. In SSR 83–23a, the Appeals Council stated that deductions imposed on benefits based on excess earnings did not terminate the children's entitlement to benefits on the record of the parent with the higher PIA, it only suspended them. "The law does not permit a dually entitled claimant to oscillate between earnings records whenever a parent *returns* to work." The ruling further stated that the children remained "entitled" to a

larger benefit on their father's account than they were "entitled" to on their mother's. Noting that a higher benefit could actually be paid on the mother's account, the Appeals Council revealed its interpretation of section 202(k)(2)(A) (42 U.S.C. § 402(k)(2)(A)) that such payment was precluded as long as the children remained "entitled" to benefits on their father's account.

kind of harm where the government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place." *State of New York v. Sullivan,* 906 F.2d 910, 918 (2d Cir.1990) (quoting *City of New York,* 476 U.S. at 484, 106 S.Ct. at 2032). Because a delayed receipt of benefits cannot restore months or years of not having the money when it was needed during the prolonged period of eligibility of the parent with the higher PIA, this Court sees no reason to require exhaustion of remedies before any class member with a live claim can benefit from a favorable judgment in this case.

Defendant maintains that class members who were denied benefits more than sixty days before this action commenced, but who did not challenge the denial, should be excluded from the class. Citing *Johnson* and *Marcus,* Defendant argues that those putative class members who failed to dispute this policy within the administrative process, cannot now be allowed to participate in the benefits of any judgment in this case. The Andres argue that such failure to bring an administrative appeal should be excused because the policy at issue was unrevealed. In this respect the defendant is correct. Those claimants who failed to exhaust their administrative remedies more than sixty days prior to the commencement of this action stand on different ground than those who could still do so at that time.

■ The Seventh Circuit has looked to a Third Circuit Court of Appeals case, *Bailey v. Sullivan,* 885 F.2d 52 (3d Cir.1989), for guidance on class composition issues in the social security context. Absent government conduct that prevents claimants from recognizing that they had a valid claim, such as a clandestine policy, failure to exhaust administrative remedies will bar a claimant from participating in a subsequent class action. *Bailey,* 885 F.2d at 64 (citing *City of New York,* 476 U.S. at 481, 106 S.Ct. at 2030–31). In *Bailey,* the court's analysis of whether to excuse failure to exhaust administrative remedies, and a corresponding failure to seek judicial review upon receiving a final decision, turned on the issue of whether the agency's policy had been "openly applied." *Id.* at 64. The *Marcus* court cited that stan-

dard with approval and also used the *Bailey* court's analytical framework of distinguishing between lapsed and live claims, only applying the secrecy standard to lapsed claims. *Marcus,* 926 F.2d at 614–15.

The plaintiffs in *Bailey* challenged several regulations dealing with determining the severity of an impairment, as well as a SSR applying the regulations. In *Marcus,* the plaintiffs also challenged both a set of regulations and the rulings made pursuant to those regulations. In neither case was waiver granted to those who had allowed their claims to lapse either administratively, or by failing to timely pursue judicial review. Here, the Andres challenge a policy that the Commissioner argues is based on the Act, the regulations interpreting the Act, and a SSR applying the regulations to facts similar to those at hand. *See* 42 U.S.C. §§ 402(d), 402(k); 20 CFR §§ 404.350, 404.353, 404.407; SSR 83–23a. In the absence of any showing that the policy at issue here should be deemed clandestine, following Seventh Circuit precedent, and the authority on which that precedent is based, will lead to excluding from the proposed class any claimants whose claims had lapsed as of the date of filing this action.

■ Because the policy applied by the Administration to deny benefits to children like the Andres was revealed in SSR 83–23a, it cannot be deemed a clandestine policy. *See City of New York,* 476 U.S. at 481, 106 S.Ct. at 2030–31; *Johnson,* 922 F.2d at 355 (citing *Bailey,* 885 F.2d at 64); *Johnson v. Shalala,* 2 F.3d 918, 923 (9th Cir.1993); *State of New York v. Sullivan,* 906 F.2d 910, 915 (2d Cir.1990) (noting that the court should look to the Secretary's "public pronouncements" on the subjects, such as Social Security Rulings, to see whether policy was revealed). The consequence for the class of this determination is that certain members of the putative class must be excluded. Those who failed to exhaust their administrative remedies, and those who had not sought judicial review of a final agency decision, as of sixty days prior to the date this action was filed, November 1, 1994, should be excluded. *See Marcus,* 926 F.2d at 614–15. Therefore, a live claim, for purposes of this litigation, is one that was filed, or that received a denial

or final decision, within sixty days of the date this action was commenced.

■ On the other hand, class members who had live claims as of November 1, 1994, that is, those who could still have exhausted their administrative remedies or sought judicial review at that time, may remain in the class because this action tolled the statute of limitations for their appeals. *See Id.* For such claimants, exhaustion of administrative remedies will not be necessary. Likewise, future class members who have not yet presented a claim for benefits should not have to exhaust their administrative remedies, if the only reason for denial of benefits is that the Administration deems them "technically" still entitled to benefits on the account of the parent with the higher PIA whose benefits have been suspended.

The issue this Court has been asked to resolve is collateral to any determination of individual entitlement to benefits. In addition, requiring class members with live claims to exhaust their administrative remedies may cause them irreparable harm. Further, no practical reason exists to require exhaustion, because the Commissioner's continued denial of benefits based on a policy already discredited by three district courts, demonstrates that exhaustion would probably not allow the Commissioner to correct her own errors. Therefore, this Court hereby deems it appropriate to judicially waive the exhaustion of remedies requirement for class members with live claims.

### 2. Sixty Day Rule

Ordinarily, for a claimant to invoke a federal district court's jurisdiction to review the Commissioner's final decision under § 405(g) of the Act, a "civil action must be commenced within sixty days after the mailing to him of notice of such decision." 42 U.S.C. § 405(g). In this case, however, members of the putative class with live claims may be excused from this requirement because the filing of the proposed class action effectively tolled the statute of limitations in their cases. *See*

*Marcus,* 926 F.2d at 614–15. If the requisites for waiver of the claimants' exhaustion of administrative remedies requirement under § 405(g) are met, waiver of the sixty day requirement would also be proper. *Id.* Having found that the claimants with live claims meet the requirement for judicial waiver of the exhaustion of administrative remedies requirement, the Court now finds that those claimants are excused from not having filed a judicial appeal or otherwise disputed the Agency's determination to deny their benefits.

With respect to those claimants whose claims had lapsed as of the date this action was commenced, the Sixty Day Rule applies unless their failure to file an appeal could be excused. The only circumstances that have been found to justify waiving the Sixty Day Rule for claimants with lapsed claims have been when the government has done something to prevent the claimant from knowing their rights had been violated. *City of New York,* 476 U.S. at 481, 106 S.Ct. at 2030–31. When the denial of benefits is based on a "systematic procedural irregularity" that the government has kept secret, all class members would be allowed to pursue an action despite expiration of the sixty days. *Id.* Since this Court has already found that the policy at issue here was not secret, but was openly applied, the claimants with lapsed claims must be excluded.

### 3. Rule 23 Requirements

The Commissioner argues that the requirements of Fed.R.Civ.P. 23(a) have not been met because the Andres have failed to establish that the class is too numerous to join each member to this action, and because the claims of the Andres are not typical of those of the other class members. Essentially she contends that by deducting those individuals who have not presented a claim, and those who have not exhausted their administrative remedies or filed an appeal within the sixty day limitations period, the class is left with an insufficient number of claimants to justify proceeding as a class action.[7]

---

7. Defendant has also argued that because many alleged members of the class do not live within the Southern District of Indiana, certification of the putative nation-wide class would be improper. Not only does this argument contradict prior authority, *see Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), it also

defies logic to say that venue must be proper for all members of a class in order to bring a valid class action. Employing defendant's venue rule would mean that no nationwide class action could ever be brought. Such a circumstance is not what the Federal Rules contemplated when

■ Because this Court has already found that those who have not yet filed a claim may be added to the class in the future, and those with live claims who have not exhausted their administrative remedies or complied with the Sixty Day Rule are excused, the foundation for defendant's argument is eroded. The entire house falls when one considers the magnitude of the problem presented by the Commissioner's continuing policy, and the hardships and expense entailed by requiring each individual class member to join this action or proceed separately. These factors favor a finding that the numerosity requirement has been met.

Even more persuasive is the fact that the information needed to determine how many other children have claims similar to the Andres, and therefore, would benefit from a judgment in this action, is within the complete control of the defendant. In May, 1995, the Commissioner claimed that a search of her records was being conducted to identify all potential class members, but that she would need at least another six months to complete the process. Six months have expired and no information has been filed with the Court in connection with the number of existing and potential class members.

Although the Andres bear the burden of proving that the requirements for class certification have been met, this Court will not require the Andres to demonstrate the number of class members with live claims before deciding to certify the class. *See Ventura v. New York City Health and Hosp. Corp.*, 125 F.R.D. 595, 599 (S.D.N.Y.1989) (holding that a plaintiff's lack of knowledge regarding the number of affected persons does not bar class certification when defendant has the means to identify those persons at will); *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D.N.Y.1986). At a minimum, the class may be certified on a provisional basis, to be decertified if the evidence fails to allow the Andres a basis from which to estimate the number of potential class members. *See Clarkson v. Coughlin,* 783 F.Supp. 789, 798 (S.D.N.Y.1992); *Lewis,* 663 F.Supp. at 1169.

■ The Andres have viable claims with respect to the Commissioner's continued application of an allegedly unlawful policy that are shared by all putative class members. Rule 23 does not require that the individual claims for relief of each class member be identical. Rather, it provides a mechanism for one court to resolve certain issues that are common to all class members and thus facilitate the resolution of each of the individual claims. *See* Fed.R.Civ.P. 23(c)(4) (allowing an action to be brought as a class action with respect to particular issues); and Fed.R.Civ.P. 23(c)(4)(B) (which allows subclasses within a general class).

For purposes of the class to be certified, the Court finds that the relevant class claim is the challenge to the facial validity of the policy used by the Commissioner to deny the Andres's claims. Resolution of their individual claims, and the individual claims of any other class member, should be separated from the decision on the class action claim, and resolved by the Administration, but guided by this Court's decision on the merits of the class claim. Any declaratory or injunctive relief granted will thus differentiate between the class-wide claim and the individual claims.

The advantages to class-wide resolution of issues such as the one presented here are apparent when noting that three other district courts have decided against the Administration in individual actions by children such as the Andres, and the Commissioner has continued denying such claims. *See Agee v. Sullivan,* 1991 WL 193636 (N.D.Ala. Mar. 29, 1991) (citing *McAninch* and holding that the largest payment possible should be given to the child); *McAninch v. Bowen,* 693 F.Supp. 353 (W.D.Pa.1988) (holding that Congress did not intend to prevent children from voluntarily terminating entitlement to benefits under the account of one disabled parent in order to apply on the account of the other disabled parent); *see also Reinkraut v. Shalala,* 854 F.Supp. 838 (D.Utah 1994) (employing a similar analysis to and citing *McAninch* on the issue of whether child can

authorizing a class action. It is sufficient that the Andres's claims are properly brought in this venue.

voluntarily terminate his entitlement to children's benefits). Absent a decision with class application, the Commissioner will presumably continue the policy declared invalid by three district courts.

The Supreme Court has long since approved of class actions with nationwide applicability in the Social Security context. *See Califano v. Yamasaki*, 442 U.S. 682, 700, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979). In *Yamasaki*, the Court, noting that the class claimants' requests for pre-deprivation hearings shared common issues and turned on common questions of law, stated that class relief in that case was "peculiarly appropriate." *Id.* at 701, 99 S.Ct. at 2557. Also sustaining the Court's finding that class relief was proper was the fact that the individual claims had little monetary value, and that each individual factual background would have little bearing on the legal issue. The Court concluded that "the class action device saves the resources of the court and the parties by permitting an issue potentially affecting every social security beneficiary to be litigated in an economical fashion under Rule 23." *Id.*

The only condition attached to the approval of the class action device in this context is that the court have jurisdiction over the claims of the members of the class in accordance with § 405(g). The *Yamasaki* Court also authorized use of a nationwide class, but cautioned courts who are asked to do likewise to ensure that nationwide relief is appropriate, and that certification of such a class would not interfere with litigation of similar issues in other districts. *Id.* at 702, 99 S.Ct. at 2558. Finally, in response to the Secretary's argument that injunctive relief was not authorized by § 405(g), the Court wrote that "absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions" in suits properly before them. *Id.* at 705, 99 S.Ct. at 2559–60. Nothing in the language or legislative history of § 405(g)

suggested to the Court that Congress intended to preclude injunctive relief in § 405(g) suits. In fact, the Court observed that injunctions "play an essential role" in § 405(g) litigation. Even more crucial is the role played by injunctive relief in class actions, where it is often necessary to protect the interests of absent class members, and to prevent repetitive litigation. *Id.*

In this case, the class is defined to include future members, a practice implicitly condoned by the *Yamasaki* court, and subsequently employed by other district courts. *See, e.g. Hill*, 125 F.R.D. 86 (S.D.N.Y.1989). Consequently, as long as the class is defined in a way that demonstrates that § 405(g) jurisdiction would be proper over the claims of present and future class members, injunctive relief is entirely appropriate.

This Court has considered the significance of certifying a nationwide class that will benefit from its rulings. No other pending litigation has been brought to the Court's attention, and the fact that censure by three district courts in three separate states has not compelled the Commissioner to change the procedures for dually entitled recipients of children's insurance benefits who are in the same circumstances as the Andres, suggests to this Court that a nationwide class is highly appropriate. The Court is also mindful of the fact that the separate factual backgrounds of each individual claimant will not affect the outcome of the legal issue presented here. Given the meager financial resources of the claimants, such as the Andres, and the relatively small amount of money at stake, it makes little sense to require a separate action by each claimant. A nationwide class, therefore, appears appropriate under these circumstances.

The Rule 23 requirements that are in dispute have been met, at least provisionally.[8] The class as alleged appears to be sufficiently numerous, and the Andres's claims with respect to the Commissioner's policy are suf-

**8.** The Court notes that the named plaintiffs and their counsel will provide fair and adequate representation of the interests of all the class members on this issue, as evidenced by the outstanding work that has been done in this case thus far. The briefing to the Appeals Council and to this Court has been thorough and very helpful in resolving the issues. Moreover, the issue of the validity of the Administration's policy with respect to dually entitled children losing benefits when the parent with the higher PIA returns to work, is indisputably the most predominant issue of this litigation.

ficiently typical among all potential class members, to enable this Court to grant a provisional certification of a class. That class, however, will be narrowed as required to preserve this Court's current and potential jurisdiction over its members. For these reasons, this Court hereby provisionally certifies the following class:

All children, past, present and future, both of whose parents are disabled, and who have presented, or will present, their claim for benefits to the Commissioner and have been, are being, or will be denied child's insurance benefits drawn on the account of their parent with a lower primary insurance amount (PIA) because their parent with the higher PIA has had his or her benefits suspended during an extended period of eligibility. The class is confined to those children whose claims for benefits on the lower PIA account were not denied, or did not receive a final decision, prior to September 1, 1994.

The Court also finds that exhaustion of administrative remedies is waived for those children who meet the class criteria, and for all those who present claims for benefits after November 1, 1994. In addition, for those with live claims as of November 1, 1994, the sixty day appeal requirement is equitably tolled by this action, even if the children have failed to dispute the Commissioner's policy at the administrative stage.

The motion for certification of a class is hereby GRANTED, subject to decertification if this Court, in its discretion, determines that the Rule 23 numerosity requirement has not been satisfied. The Commissioner will be given thirty (30) days from the date of this order to provide the Andres with the discovery they requested with respect to the potential number of class members. If such information is not, or cannot be, supplied, then the Court will not require the Andres to offer any additional proof with respect to numerosity.

### B. SUMMARY JUDGMENT

The facts in this case are not in dispute. The only disputes involve matters of law. Consequently, resolution of this controversy by summary judgment is entirely appropriate. At issue is the question of law regarding whether the Commissioner's policy of denying children of two disabled parents the right to transfer their entitlement from the account of the parent with the higher PIA to the account of the parent with the lower PIA, when the first parent has returned to work and the child's benefits are therefore suspended on that parent's account.

This Court cannot add to the well-reasoned analysis of this issue undertaken by the court in *McAninch*, which found against the Commissioner's policy of denying benefits to a child on the account of one disabled parent because the child remains technically entitled to benefits on the other parent's account. *McAninch*, 693 F.Supp. at 358. Not only is such a policy inconsistent with the stated goals of the Social Security Act, that is, to protect the disabled and their dependents, it is also inconsistent with the purpose behind the provision requiring that children's benefits be drawn from the account of the parent with a higher PIA. That purpose is to ensure that a household comprised of disabled parents who are supporting minor children will receive the maximum amount of benefits possible. Here, by denying the Andres the opportunity to transfer their entitlements to the lower PIA account, the Commissioner places an unwarranted and unrealistic cap on allowable household benefits.

The Administration has also acted in a way that may violate its own regulations. In 20 CFR § 404.403(e), the regulations provide that for those persons entitled to benefits on the earnings record of an insured individual who would, "except for the limitations described in § 404.353(b), be entitled to child's insurance benefits on the earnings record of one or more other insured individuals," the total benefits to be paid may not be less than certain specified amounts. 20 CFR § 404.403(e). The actual language is that the total benefits "may not be reduced to less than the smaller of—(i) the sum of the maximum amounts of benefits payable on the earnings record of all the insured individuals, or (ii) 1.75 times the highest primary insurance amount possible for that month based on the average indexed monthly earnings...." *Id.* Nowhere in the record has this Court found any mention of this regula-

tion, much less an attempt to reconcile it with the Commissioner's policy with regard to dual entitlements.

The limitation referred to in § 404.353(b) is the one at issue here. It provides that if a child is entitled to benefits on more than one person's account, the child should receive the benefit payable on the record with the higher PIA. Section 404.353(b) also provides that if a child's benefit before any reduction would be larger on the earnings record with a lower PIA, then the child's benefits will be determined on that account if no other person's benefits will be thereby reduced. By construing these two regulations together, a policy emerges of attempting to preserve children's benefits at the highest amount in the face of any reductions. The Commissioner, however, does not construe George's "suspension" of benefits as a "reduction." Instead, the Commissioner compares the parents' accounts in terms of the amount of benefits to which a child would be "entitled," without regard to the amount the child would actually receive. R. 7. Finding that the boys remain technically entitled to a higher benefit on their father's account, even though they are not allowed to receive the benefit, the Commissioner refuses to transfer their entitlement to their mother's account. Consequently, the Commissioner makes no attempt to preserve the Andres's benefits.

 Courts will usually defer to the Agency's interpretation of its regulations unless such interpretation is arbitrary, capricious, or manifestly contrary to statute. *Wilkins v. Sullivan*, 889 F.2d 135, 139 (7th Cir. 1989); *Reinkraut*, 854 F.Supp. at 841 (referring to deference given to agency regulations that interpret the statute). Generally, the Social Security Act is "construed liberally in favor of beneficiaries to effect the act's remedial purpose." *Id.* When the Agency's interpretation of the statute, when juxtaposed with its own regulations, appears absurd, courts will intervene. Here, the result is so absurd that even the Agency's own spokesperson has acknowledged its unfairness and inequity.

Nevertheless, the Administration is sticking to the letter of the rule, at the sacrifice of the spirit of the law. In fact, the Commissioner's primary argument against summary judgment revolves around a narrow and technical interpretation of the meaning of the word "entitled," such that, even though in the abstract the interpretation appears reasonable, in its application it is inconsistent with the policy behind the Act. The agency's decision, bound by economic considerations, is a mechanical application of the Social Security laws.

Moreover, disabled parents have no incentive to attempt to return to work, and thus become premium-paying instead of benefit-receiving members of society, when they learn that their children will be denied benefits as a result of their attempt. Such a disincentive runs counter to the concept that the Act was passed to *help* those in need. It is not helpful to penalize the family of two disabled parents when one of those parents attempts to return to work, but the family remains in need. For that reason, as well as all of the reasons outlined in *McAninch*, this Court finds that the motion for summary judgment filed by the Andres, should be and hereby is **GRANTED.**

## IV. CONCLUSION

The Court has modified the definition of the proposed class to comply with the jurisdictional requirements of § 405(g) of the Act. Having done so, the Court has found, provisionally, that the requirements for certifying a class pursuant to Fed.R.Civ.P. 23(b)(2) have been met. Consequently, provisional certification of the following class should be **GRANTED,** subject to later decertification as explained above:

All children, past, present and future, both of whose parents are disabled, and who have presented, or will present, their claim for benefits to the Commissioner and have been, are being, or will be denied child's insurance benefits drawn on the account of their parent with a lower primary insurance amount (PIA) because their parent with the higher PIA has had his or her benefits suspended during an extended period of eligibility. The class is confined to those children whose claims for benefits on the lower PIA account were not denied, or did not receive a final decision, prior to September 1, 1994.

Exhaustion of administrative remedies and the requirement that an appeal be brought within sixty days of a final decision have been waived for these class members.

With respect to the central and predominant claim considered on behalf of this class, the Court finds that no genuine issues of material fact exist, and that summary judgment should be entered for the class. Summary judgment is proper on the issue of validity of the Commissioner's policy of refusing to allow children who are entitled to benefits on the account of a parent with the higher PIA, whose benefits become suspended during an extended period of eligibility, to transfer to the account of the parent with the lower PIA. That policy is inconsistent with the policy behind the Social Security Act, and with certain regulations, leads to results not contemplated by the Act.

The Commissioner is hereby ordered to provide to the Andres, within thirty days of the date of this order, all of the information needed by the plaintiffs to support their claim that numerous potential class members exist. In the absence of such production, this Court may order that the certification of this class become final. Final judgment based on the ruling reflected in this opinion will not be entered until such time that the class certification is either finalized, or shown to be improper.

IT IS SO ORDERED.